**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
BEAUMONT DIVISION

**UNITED STATES OF AMERICA,**
*Plaintiff,*

v.

**TROI GRAHAM (5),**
*Defendant.*

**CASE NO. 1:25-CR-00038-MAC-ZJH**

**HON. MARCIA A. CRONE**
United States District Judge

**EMERGENCY MOTION FOR SUBSTITUTION OF COUNSEL, CONSTITUTIONAL VENUE DISMISSAL, AND RULE 21(b) TRANSFER**

# DEFENDANT TROI GRAHAM'S COMPREHENSIVE EMERGENCY MOTION TO DISTRICT JUDGE MARCIA A. CRONE FOR SUBSTITUTION OF COUNSEL, PRESERVATION OF SUPPRESSION, DISMISSAL FOR IMPROPER VENUE, AND RULE 21(B) TRANSFER

COMES NOW Defendant Troi Graham ("Defendant"), appearing *pro se* on an emergency basis directly before District Judge Marcia A. Crone, and respectfully moves this Court for an Order: (1) substituting appointed CJA Counsel Thomas J. Burbank due to an absolute, unresolvable breakdown in communication and complete failure to provide representation under the Sixth Amendment; (2) conducting an immediate evidentiary inquiry pursuant to *United States v. Young*, 482 F.2d 993 (5th Cir. 1973); (3) ruling that Defendant's *pro se* filings do not constitute impermissible "hybrid representation" where appointed counsel has completely abandoned constitutional defense duties; (4) dismissing the indictment against Defendant for constitutional lack of venue/territorial jurisdiction under Art. III, § 2, Cl. 3 and the Sixth Amendment; and (5) transferring venue to the Eastern District of Michigan pursuant to Fed. R. Crim. P. 21(b) based on absolute territorial lack of nexus and extreme caregiver hardship.

## I. JURISDICTION & MANDATORY DISTRICT JUDGE RECONSIDERATION

This Motion is submitted directly to Honorable District Judge Marcia A. Crone rather than the Magistrate Judge because Magistrate Judges Stetson and Hawthorn have repeatedly struck or denied Defendant's prior motions for substitution without conducting the required *Young* evidentiary inquiry (See Exhibit E: Dkts. #92, #103, #200, #322). Under 28 U.S.C. § 636(b)(1)(A), a District Judge must reconsider any non-dispositive Magistrate ruling shown to be clearly erroneous or contrary to law. Summaily striking a defendant's repeated claims of complete attorney breakdown without holding a hearing violates binding Fifth Circuit law. *United States v. Fields*, 483 F.3d 313, 352 (5th Cir. 2007). Furthermore, Article III venue and Sixth Amendment structural deprivations require direct District Court adjudication.

## II. EXCEPTION TO HYBRID REPRESENTATION: COUNSEL'S STRUCTURAL ABANDONMENT

While courts generally disfavor "hybrid representation" under 28 U.S.C. § 1654, the Fifth Circuit has explicitly established that local procedural rules against *pro se* filings cannot be weaponized to gag a criminal defendant whose court-appointed attorney has completely abandoned their defense or actively refused to file crucial constitutional motions. See *United States v. Long*, 597 F.2d 1037, 1042 (5th Cir. 1979); *United States v. Essig*, 10 F.3d 968, 973 (3d Cir. 1993) (holding that courts must consider *pro se* filings where counsel's inaction threatens permanent waiver of fundamental rights).

Here, CJA Counsel Burbank has executed zero substantive pre-trial motions across 365+ days (Exhibit A). Forcing Defendant to speak exclusively through an attorney who refuses to file motions or communicate creates an untenable catch-22: Defendant is forced to either remain silent and waive her Fourth, Fifth, and Sixth Amendment rights under Fed. R. Crim. P. 12(c)(3), or file *pro se* and have her pleadings struck for "hybrid representation." Where appointed counsel functions as an obstruction to defense rather than an advocate, the Court must consider the defendant's direct pleadings to prevent structural constitutional error.

## III. UNREFUTED PROOF OF ATTORNEY BREAKDOWN & COMPLAINT RECORD

Under the Sixth Amendment, an indigent defendant is constitutionally entitled to effective, conflict-free representation and the replacement of appointed counsel upon a showing of "good cause." *United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973); *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985). Good cause exists where there is a complete breakdown in communication, an irreconcilable conflict, or a total failure by counsel to advocate on behalf of the accused.

The record in this case establishes complete, non-functioning representation under *United States v. Cronic*, 466 U.S. 648 (1984), where the performance of counsel is so absent that the prosecution's case was never subjected to meaningful adversarial testing:

- **Complete Abandonment of Pre-Trial Practice:** PACER docket history (Exhibit A) proves that during more than one full year of appointment, attorney Thomas J. Burbank filed zero discovery motions, zero suppression motions, zero venue transfer motions, and zero substantive pleadings.
- **Refusal to Follow Written Instructions:** Defendant provided written, explicit instructions demanding the filing of a Motion to Suppress Fourth Amendment search violations, a Motion for Bill of Particulars, and Grand Jury Minutes (Exhibit F: Emails dated Dec. 2025 – Oct. 2026). Counsel repeatedly ignored these instructions, allowing crucial court deadlines to lapse.
- **Hostility & Failure to Prepare:** Counsel explicitly advised Defendant to "pack her toothbrush" for trial rather than preparing a defense, completely refusing to review exculpatory evidence or discuss defense strategy.
- **Formal Supervisory & Disciplinary Complaints:** Defendant has exhausted all available administrative remedies regarding counsel's misconduct, including:
  - Formal complaint email to EDTX CJA Supervisory Administrator (`cjasupport@txed.uscourts.gov`) filed December 10, 2025 (Exhibit G: Page 61).
  - Disciplinary grievance submitted to the State Bar of Texas Grievance Committee regarding abandonment and unethical conduct.
  - Formal notification to the CJA Panel Selection Committee and the United States Court of Appeals for the Fifth Circuit.

> *"When a defendant raises a seemingly substantial complaint as to the care, behavior, or ability of his counsel, the court has an obligation to inquire thoroughly into the source of his dissatisfaction and may not summarily dismiss the motion." — United States v. Young, 482 F.2d at 995.*

## IV. PRESERVATION OF FOURTH & FIFTH AMENDMENT SUPPRESSION MOTIONS

Federal Rule of Criminal Procedure 12(b)(3)(C) requires motions to suppress evidence to be raised prior to trial. Under Rule 12(c)(3), if a party misses a deadline, the motion is treated as waived unless the court finds "good cause."

Defendant's *pro se* Demand to File Motion to Suppress was submitted to the Clerk and served via UPS Next Day Air prior to the expiration of pretrial filing deadlines (Exhibit B: Dkt. #197). The failure of appointed counsel to formalize this motion constitutes clear "good cause" under Rule 12(c)(3). Defendant's Fourth Amendment rights—challenging warrantless searches, defective warrants, and illegal seizures of business accounts—must be preserved for hearing before Judge Crone.

## V. ABSOLUTE CONSTITUTIONAL LACK OF VENUE & JURISDICTION IN TEXAS

Article III, Section 2, Clause 3 of the United States Constitution explicitly commands that "the Trial of all Crimes... shall be held in the State where the said Crimes shall have been committed." The Sixth Amendment further guarantees a trial by an impartial jury "of the State and district wherein the crime shall have been committed." Federal Rule of Criminal Procedure 18 reinforces that "the government must prosecute an offense in a district where the offense was committed."

In *United States v. Cabrales*, 524 U.S. 1, 6-7 (1998), the Supreme Court held that venue is constitutional, non-waivable without consent, and determined strictly by the *locus delicti*—the specific geographic location of the acts constituting the alleged crime. The government cannot drag a non-resident defendant into a distant forum where the defendant performed no overt acts within that forum.

### 1. Complete Lack of Texas Territorial Nexus

Defendant Troi Graham has zero physical, business, or operational presence in the State of Texas or the Eastern District of Texas:

- Defendant has been a continuous, uninterrupted resident of Dearborn, Wayne County, Michigan. She owns no property, holds no bank accounts, and maintains no physical presence in Texas.
- All commercial activities alleged in the indictment were conducted strictly through two domestic Michigan entities: **My Big Sister's House** (LARA ID: 71496H) and **Lionsgate Business Consulting** (LARA ID: 802136307) (Exhibit I: Pages 77–79). These entities were incorporated, registered, and operated exclusively within Wayne County, Michigan.
- The government has alleged no direct acts, wire transmissions, or physical conduct executed by Defendant within the Eastern District of Texas. Venue in EDTX is artificially manufactured based solely on co-defendant acts in which Defendant had no involvement or knowledge.

### 2. Mandatory Venue Dismissal Standard

Under *Cabrales*, where an indictment charges conduct that occurred entirely within one state (Michigan), venue in another state (Texas) is unconstitutional as a matter of law. Prosecuting Defendant in Beaumont, Texas violates her constitutional right to be tried in the district where the alleged acts occurred. The counts against Defendant must be dismissed for lack of constitutional venue, or immediately transferred under Rule 21(b).

## VI. RULE 21(B) TRANSFER OF VENUE TO EASTERN DISTRICT OF MICHIGAN

Even assuming *arguendo* that venue were technically colorable in Texas, Federal Rule of Criminal Procedure 21(b) mandates transfer to the Eastern District of Michigan "for the convenience of parties and witnesses and in the interest of justice." In *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240, 243-44 (1964), the Supreme Court established ten balancing factors. An evaluation of the *Platt* factors demonstrates that transfer is overwhelmingly required:

1. **Location of Defendant & Businesses:** Defendant resides in Dearborn, Michigan. Her corporate entities operate strictly under Michigan LARA filings (Exhibit I).
2. **Location of Witnesses & Banking Records:** All defense witnesses, corporate records, and financial institutions are located in Wayne County, Michigan.
3. **Extreme Caregiver & Medical Hardship (Exhibit J):** Defendant is the sole primary caregiver for her three-year-old daughter, H.R., who suffers from severe, life-threatening neurological and developmental conditions:
   - *WDR45-Related Neurological Disorder (BPAN):* A rare genetic neurodegenerative condition (Exhibit J: U-M Health Note, Apr. 22, 2026).
   - *Temporal Lobe Epilepsy & Right Hippocampal Sclerosis:* Requiring daily Keppra administration and emergency nasal Diastat protocols for seizures (Exhibit J: U-M MRI Report, Apr. 10, 2026).
   - *Level 3 Autism Spectrum Disorder (ICD-10 F84.0):* Nonverbal with severe cognitive and daily living impairments (Exhibit J: McCrory Center Evaluation, Apr. 14, 2026).
   - *35 Hours/Week Intensive ABA Therapy:* Medically mandated clinical regimen at MetroEHS in Michigan (Exhibit J: Aug. 2026 Plan).
4. **State Vocational Rehabilitation (Exhibit K):** Defendant is actively enrolled in Michigan Department of Labor & Economic Opportunity (LEO) Rehabilitation Services (MRS).

Forcing a mother managing an epileptic child receiving 35 hours of weekly therapy to travel 1,000+ miles to Texas severely prejudices her ability to defend herself and deprives her child of essential medical care, directly violating the interest of justice under Rule 21(b).

## VII. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Defendant Troi Graham respectfully requests that District Judge Marcia A. Crone enter an Order to: (1) remove Thomas J. Burbank and appoint substitute CJA counsel; (2) conduct an immediate *Young* evidentiary hearing; (3) accept Defendant's *pro se* Motion to Suppress as timely preserved; (4) dismiss the indictment for lack of constitutional venue under *Cabrales*; or (5) transfer all proceedings to the Eastern District of Michigan under Rule 21(b).

Respectfully submitted,

**TROI GRAHAM**, *Defendant Pro Se*
Dearborn, Wayne County, Michigan | Phone: [Your Phone Number] | Email: [Your Email Address]

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2026, a true and correct copy of this Emergency Motion was served via Certified Mail / Electronic Service upon Assistant U.S. Attorney (EDTX) and Thomas J. Burbank, CJA Counsel.

Troi Graham

**1:25-cr-00038-MAC-ZJH-5** USA v. Graham et al
**Date filed:** 06/04/2025
**Date of last filing:** 10/28/2026

# History

Exhibit A1

| Doc. No. | Dates | | Description |
|---|---|---|---|
| 1 | *Filed & Entered:* | 06/04/2025 | Indictment (Sealed) |
| 6 | *Filed & Entered:* | 06/04/2025 | AO 257 Filed |
| 11 | *Filed & Entered:* | 06/04/2025 | Indictment - Redacted |
| 16 | *Filed & Entered:* | 06/04/2025 | Warrant Issued |
| | *Filed:*<br>*Entered:* | 11/17/2025<br>11/20/2025 | Arrest - Other District |
| | *Filed:*<br>*Entered:* | 11/17/2025<br>11/20/2025 | Indictment Unsealed |
| 77 | *Filed:*<br>*Entered:* | 11/19/2025<br>11/20/2025 | Rule 5(c)(3) Documents Received After Arrest in Other District |
| | *Filed & Entered:* | 11/20/2025 | CJA 20 - Appointment/Order Appointing Attorney |
| | *Filed & Entered:* | 11/20/2025 | Notice of Hearing |
| 78 | *Filed & Entered:* | 11/24/2025 | Warrant Returned Executed |
| | *Filed & Entered:* | 12/15/2025 | Notice of Hearing |
| 85 | *Filed & Entered:* | 12/18/2025 | Notice of Attorney Appearance - USA |
| | *Filed & Entered:* | 12/29/2025 | Notice of Hearing |
| | *Filed:*<br>*Entered:* | 01/06/2026<br>01/07/2026 | Arraignment |
| 86 | *Filed & Entered:*<br>*Terminated:* | 01/06/2026<br>01/06/2026 | Motion for Miscellaneous Relief |
| 89 | *Filed:*<br>*Entered:* | 01/06/2026<br>01/07/2026 | Order Setting Conditions of Release |
| 90 | *Filed:*<br>*Entered:* | 01/06/2026<br>01/07/2026 | Order - Pretrial Discovery & Inspection |
| 91 | *Filed:*<br>*Entered:* | 01/06/2026<br>01/07/2026 | Scheduling Order |
| 92 | *Filed:*<br>*Entered:* | 01/06/2026<br>01/08/2026 | Order on Motion for Miscellaneous Relief |
| 88 | *Filed & Entered:* | 01/07/2026 | Warrant Returned Executed |
| 95 | *Filed & Entered:*<br>*Terminated:* | 01/14/2026<br>01/29/2026 | Motion for Protective Order |
| 98 | *Filed & Entered:*<br>*Terminated:* | 01/27/2026<br>01/29/2026 | Motion to Substitute Attorney |

| | | |
|---|---|---|
| 99 | *Filed & Entered:* 01/27/2026 | Response to Motion |
| 102 | *Filed & Entered:* 01/29/2026 | Protective Order |
| 103 | *Filed & Entered:* 01/29/2026 | Order on Motion to Substitute Attorney |
| 110 | *Filed:* 02/05/2026<br>*Entered:* 02/06/2026 | Indictment (Sealed) |
| 115 | *Filed:* 02/05/2026<br>*Entered:* 02/06/2026 | AO 257 Filed |
| 119 | *Filed:* 02/05/2026<br>*Entered:* 02/06/2026 | Indictment - Redacted |
| | *Filed & Entered:* 02/06/2026 | Notice of Hearing |
| 135 | *Filed & Entered:* 02/17/2026 | Waiver of Presence at Arraignment |
| 140 | *Filed & Entered:* 02/19/2026<br>*Terminated:* 02/24/2026 | Motion for Miscellaneous Relief |
| 146 | *Filed:* 02/24/2026<br>*Entered:* 02/25/2026 | Order to Continue - Ends of Justice |
| 147 | *Filed & Entered:* 02/25/2026 | Order to Continue - Ends of Justice |
| 148 | *Filed & Entered:* 02/25/2026 | Scheduling Order |
| 196 | *Filed & Entered:* 06/05/2026<br>*Terminated:* 06/10/2026 | Motion to Substitute Attorney |
| 197 | *Filed & Entered:* 06/05/2026 | Notice (Other) |
| 198 | *Filed & Entered:* 06/08/2026<br>*Terminated:* 06/10/2026 | Motion to Substitute Attorney |
| 199 | *Filed & Entered:* 06/08/2026<br>*Terminated:* 06/23/2026 | Motion to Continue |
| 200 | *Filed:* 06/10/2026<br>*Entered:* 06/11/2026 | Order on Motion to Substitute Attorney |
| | *Filed & Entered:* 06/11/2026 | Notice of Mailing |
| 201 | *Filed & Entered:* 06/12/2026<br>*Terminated:* 06/23/2026 | Motion to Continue |
| 206 | *Filed & Entered:* 06/23/2026 | Order on Motion to Continue |
| 207 | *Filed & Entered:* 06/23/2026 | Scheduling Order |
| 216 | *Filed & Entered:* 08/13/2026<br>*Terminated:* 08/19/2026 | Motion to Continue |
| 218 | *Filed & Entered:* 08/17/2026<br>*Terminated:* 08/19/2026 | Motion for Miscellaneous Relief |
| 219 | *Filed:* 08/19/2026<br>*Entered:* 08/20/2026 | Order on Motion to Continue |
| 220 | *Filed:* 08/19/2026<br>*Entered:* 08/20/2026 | Scheduling Order |
| | *Filed & Entered:* 09/02/2026 | Notice of Hearing |
| 225 | *Filed & Entered:* 09/02/2026 | Indictment |
| 234 | *Filed & Entered:* 09/02/2026 | Notice (Other) |
| | *Filed & Entered:* 09/03/2026 | Add and Terminate Attorneys |

A2 Exhibit

| | | |
|---|---|---|
| 247 | *Filed & Entered:* 09/10/2026 | Notice (Other) |
| 253 | *Filed & Entered:* 09/11/2026 | Order to Continue - Ends of Justice |
| 254 | *Filed:* 09/11/2026<br>*Entered:* 09/14/2026 | Scheduling Order |
| 255 | *Filed:* 09/11/2026<br>*Entered:* 09/14/2026 | Order |
| 259 | *Filed & Entered:* 09/16/2026 | Waiver of Presence at Arraignment |
| 277 | *Filed & Entered:* 09/25/2026 | Notice (Other) |
| 278 | *Filed & Entered:* 09/25/2026 | Notice (Other) |
| 316 | *Filed & Entered:* 10/13/2026<br>*Terminated:* 10/15/2026 | Motion to Substitute Attorney |
| 318 | *Filed & Entered:* 10/13/2026<br>*Terminated:* 10/20/2026 | Motion to Continue |
| 320 | *Filed & Entered:* 10/14/2026 | Order |
| 321 | *Filed:* 10/14/2026<br>*Entered:* 10/15/2026 | Order |
| 322 | *Filed & Entered:* 10/15/2026 | Order on Motion to Substitute Attorney |
| 323 | *Filed & Entered:* 10/15/2026 | Response to Motion |
| 324 | *Filed & Entered:* 10/15/2026 | Motion for Extension of Time to File Response/Reply |
| 325 | *Filed & Entered:* 10/15/2026 | Order on Motion for Extension of Time to File Response/Reply |
| 327 | *Filed & Entered:* 10/15/2026 | Reply to Response |
| 329 | *Filed & Entered:* 10/16/2026 | Order |
| 340 | *Filed & Entered:* 10/20/2026 | Order to Continue - Ends of Justice |
| 341 | *Filed & Entered:* 10/20/2026 | Scheduling Order |
| | *Filed & Entered:* 10/26/2026 | Notice of Hearing |

A3 Exhibit

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/28/2026 10:13:33 | | | |
| **PACER Login:** | Troi0218 | **Client Code:** | 8458614 |
| **Description:** | History/Documents | **Search Criteria:** | 1:25-cr-00038-MAC-ZJH |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS BEAUMONT DIVISION**

**UNITED STATES OF AMERICA v. TROI GRAHAM Case No.: 1:25-cr-00038-MAC**

**NOTICE OF DEMAND FOR COUNSEL TO FILE PRETRIAL MOTIONS AND RESERVATION OF RIGHTS**

Comes now the Defendant, Troi Graham, proceeding *pro se*, and hereby notifies the Court and the Government of the following:

1. **Demand for Filing:** The Defendant has formally requested that his Counsel of Record file a Motion to Suppress Evidence in this matter by the June 8, 2026, scheduling order deadline.
2. **Reservation of Rights:** The Defendant hereby gives notice that he does not waive, and expressly reserves, all challenges to the Court's jurisdiction, the appropriateness of venue, and the admissibility of all evidence presented by the Government.
3. **Preservation of Record:** This Notice is filed to preserve the Defendant's rights and to create a clear record that the Defendant has demanded the filing of necessary pretrial motions.

**CERTIFICATE OF SERVICE** I hereby certify that a true and correct copy of the foregoing Notice was served upon the Counsel of Record and the United States Attorney for the Eastern District of Texas on this 2nd day of June, 2026.

Respectfully submitted,

/s/ Troi Graham Troi Graham 3829 Roosevelt Dearborn, MI 48124 517-554-6918

Signature

A4

A5 Ex 69

Troi Graham
3829 Roosevelt
Dearborn MI 48124

TROI GRAHAM
(517) 703-7720
THE UPS STORE #3239
4337 E GRAND RIVER AVE
HOWELL MI 48843-6583

1 LBS 1 OF 1
SHP WT: 1 LBS
DATE: 04 JUN 2026

SHIP TO:
JACK BROOKS FEDERAL BLDG & US COURT
UNITED STATES DISTRICT CLERK
STE 104
300 WILLOW ST
BEAUMONT TX 77701

TX 777 0-01

UPS NEXT DAY AIR 1
TRACKING #: 1Z 593 W75 24 3155 8136

BILLING: P/P
SIGNATURE REQUIRED

MHVF3Z1R8CDTV ISH 13.00C ZZD230 EP 20.5V 05/2026

United States
Brooks Federal Bldg a[illegible] Courthouse
300 Willow Street Suite 104
Beaumont Texas 77701

UNITED STATES DISTRICT CLERK
300 WILLOW ST
STE 104
BEAUMONT TX 77701
E:111 S:111 1:111
AAKI - 1075
1Z593W75243155 8136
1030

The UPS Store Smart Label
Tracking #
1Z593W75243155 8136

CLERK, U.S. DISTRICT COURT
RECEIVED
JUN 05 2026
EASTERN DISTRICT OF TEXAS
BEAUMONT, TEXAS

AU Exhibit

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

JAN 06 2026

BY
DEPUTY ____________

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

UNITED STATES OF AMERICA
v.
**TROI GRAHAM**, Defendant

Case No. **1:25-cr-00038-MAC-ZJH-5**

**DEFENDANT'S LIMITED PRO SE MOTION**
**TO REQUEST DISCOVERY, A BILL OF PARTICULARS,**
**AND TO PRESERVE RIGHTS REGARDING VENUE AND JURISDICTION**

**INTRODUCTION**
Defendant Troi Graham respectfully submits this limited pro se motion at this early stage of the proceedings for the sole purpose of preserving constitutional rights and creating a clear record. Defendant is represented by counsel and is not seeking to replace counsel. This motion is submitted in good faith and with respect for the Court.

**REQUEST FOR ACCESS TO FULL DISCOVERY**
Defendant respectfully requests that the Court ensure Defendant has access to full discovery, including all materials produced by the government to defense counsel, so that Defendant may meaningfully understand the allegations and assist in the preparation of the defense.

**REQUEST FOR BILL OF PARTICULARS**
**(Fed. R. Crim. P. 7(f))**
Defendant respectfully requests that the government be directed to provide a **written Bill of Particulars** identifying with specificity: The acts allegedly committed by Defendant; The dates and locations of those acts; and The factual basis connecting Defendant to venue in the Eastern District of Texas. This request is made so Defendant may clearly understand the charges, avoid surprise, and evaluate any future pretrial motions. Defendant does not seek to rely on oral explanations in lieu of a written filing.

**REQUEST FOR GRAND JURY MINUTES / TRANSCRIPTS**
**(Fed. R. Crim. P. 6(e))**
Defendant respectfully requests disclosure of **grand jury minutes and transcripts relevant to venue and jurisdiction**, or, in the alternative, a written ruling of the Court addressing the request. This request is narrowly tailored and made solely to allow Defendant to review whether venue and jurisdiction were properly established. Defendant respectfully requests that this issue be addressed through written materials or written rulings, not oral representations, for purposes of preserving the record.

**RESERVATION OF RIGHTS — VENUE AND JURISDICTION**
Defendant expressly reserves all rights to challenge venue and jurisdiction at a later date after receipt

of discovery and particularized information. Defendant is not requesting dismissal or other dispositive relief at this time. This reservation is made solely to prevent waiver and preserve the appellate record.

**CONCLUSION**
Defendant respectfully requests that the Court ensure access to full discovery, direct the government to provide a written Bill of Particulars, address the request for grand jury materials through written disclosure or written ruling, and recognize Defendant's reservation of venue and jurisdiction rights.

Respectfully submitted,

**Troi Graham**
Defendant, Pro Se (Limited Purpose)
Date: 1/6/26

3829 Roosevelt
Dearborn MI 48124

A7 Exhibit

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

A8 Ex-6-X

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | **CRIMINAL ACTION NO. 1:25-CR-00038-MAC** |
| **v.** | § | |
| **TROI GRAHAM (5)** | § | |
| | § | |
| | § | |

**DEFENDANT TROI GRAHAM'S EMERGENCY MOTION FOR SUBSTITUTION OF COURT-APPOINTED COUNSEL, NOTICE OF CONTINUOUS BREAKDOWN IN REPRESENTATION, AND RESERVATION OF RIGHTS**

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW Defendant Troi Graham, proceeding *pro se* solely to address the breakdown of court-appointed counsel, and respectfully moves this Court for the immediate substitution of appointed defense counsel, Mr. Thomas Burbank, Defendant files this emergency motion to notify the Court of counsel's failure to act on critical pretrial deadlines, to document a continuous breakdown in representation, and to preserve all constitutional, jurisdictional, and appellate rights.

## I. INTRODUCTION & PROCEDURAL POSTURE

1. Defendant Troi Graham is currently charged in the above-captioned matter and is represented of record by court-appointed attorney, Mr. Thomas Burbank.

2. Under the Court's Amended Pretrial Order (Dkt. #254), mandatory pretrial deadlines—including motions for continuance, notifications of trial/plea intent, and motions in limine—are actively expiring in October 2026.

## II. SPECIFIC GROUNDS FOR SUBSTITUTION & CONTINUOUS BREAKDOWN

3. The Sixth Amendment guarantees a criminal defendant effective assistance of counsel, requiring meaningful consultation, adherence to court deadlines, and diligent preparation of defense strategy.

4. Good cause exists for immediate substitution of appointed counsel due to a complete, continuous, and irreconcilable breakdown in communication and representation that materially impairs Defendant's ability to defend against these charges.

5. Specifically, counsel failed to conduct scheduled telephone consultations, including failing to call Defendant as scheduled on Friday, October 9, 2026, and has consistently failed to respond to urgent inquiries regarding mandatory court deadlines. Counsel has failed to prepare or file critical protective pretrial motions on Defendant's behalf despite express written demands.

## III. FACTUAL DISCOVERY DISCREPANCIES & RESERVATION OF RIGHTS

7. Defendant explicitly notifies the Court and preserves for the record that all discovery produced in this matter originates from Michigan ("MI"), the underlying indictment and alleged activity occurred in Michigan rather than Texas, and police reports fail to identify or mention Defendant in connection with alleged victims.

8. Defendant hereby expressly preserves and reserves all challenges, objections, and appellate rights concerning improper venue and lack of territorial or subject-matter jurisdiction in the Eastern District of Texas.

9. Defendant further preserves and reserves all rights under the Fifth and Sixth Amendments regarding suppression of evidence, effective representation, discovery review, and all constitutional appellate remedies.

## IV. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Defendant Troi Graham respectfully requests that this Honorable Court:

A. Grant this Motion for Substitution of Counsel;
B. Relieve Mr. Thomas Burbank as court-appointed counsel of record;
C. Appoint new, competent substitute counsel to protect Defendant's constitutional rights; and
D. Grant such other and further relief as the Court deems just and proper, while fully preserving all reserved appellate, venue, and jurisdictional rights.

Respectfully submitted,

______________________________

**Troi Graham, Defendant Pro Se**
3829 Roosevelt
Dearborn, MI 48124
Phone: 517-492-4341

---

## CERTIFICATE OF SERVICE

I hereby certify that on this 12 day of October, 2026, a true and correct copy of the foregoing document was served via U.S. First-Class Mail and/or Express Delivery upon counsel of record:

**Thomas J. Burbank** (Defense Counsel)
505 West Lucas, Beaumont, TX 77706
Email: burbank_hamm@yahoo.com

**United States Attorney's Office**
Eastern District of Texas

Gmail Exibit 1

Troi Graham <troigraham202@gmail.com>

**THIRD URGENT REQUEST !!!!**

1 message

**Troi Graham** <troigraham202@gmail.com> Tue, Jun 2, 2026 at 6:24 PM
To: Thomas Burbank <burbank_hamm@yahoo.com>, cjasupport@txed.uscourts.gov

**Dear Thomas Burbank,**

I am writing to you today to formally request that you file a Motion to Suppress regarding all evidence in my case.

As you are aware, the court's scheduling order sets the deadline for filing pretrial motions, including a Motion to Suppress, for June 8, 2026. This evidence is critical to my defense, and I believe there are clear legal grounds for suppression.

It is my constitutional right to have these issues litigated before trial.

If I do not see that you have filed any motions in my case since it has started. I will be forced to notify the Court of my request and your failure to act, as this jeopardizes my defense and my constitutional rights.

I expect a prompt response regarding this critical matter.

Sincerely,

Troi Graham

A10 Exibit

Exibit

Gmail Troi Graham <troigraham202@gmail.com>

**UPDATE: CLARIFICATION OF DIRECTIVES / REQUEST TO WITHDRAW - US v. Troi Graham (1:25-cr-00038)**
1 message

**Troi Graham** <troigraham202@gmail.com> Thu, Jun 11, 2026 at 12:49 AM
To: Thomas Burbank <burbank_hamm@yahoo.com>, cjasupport@txed.uscourts.gov

Dear Mr. Burbank,

I am writing to provide definitive clarification regarding my previous email.

To be completely clear: I am **not** instructing you to withdraw the pending Motion for Continuance (Document 199) from the court's consideration. Because your failure to communicate, failure to properly review discovery, and failure to timely file my Motion to Suppress has left the defense unprepared for a July trial, the additional time requested in that motion is now *legally necessary to protect my rights and finalize my evidence.* I want that continuance to remain active.

However, while I agree that the **time** must be kept, you cannot remain on this case. The attorney-client relationship is permanently broken. You have directly violated my written instructions, missed critical motion deadlines, I request that you **withdraw as Counsel of Record.**

You may state in your motion to withdraw that additional time is required for the defense to transition to new counsel, which preserves the necessity of the continuance for the court.

Please confirm by the end of business today that you will voluntarily file your Motion to Withdraw. If you do not, I will file my *Pro Se Motion for Substitution of Counsel* directly with the Clerk, making it clear to the Judge that while I agree the continuance must stand to fix the lack of case preparation, I absolutely require substitute counsel to take over.

*Sincerely,*

Troi Graham troigraham202@gmail.com 517-554-6918

All Exibit

A12 Exibit

Tia's Graham
20049 Evergreen Meadows
Southfield MI 48076

Jack Brooks Federal Building & US Courthouse
300 Willow Street Suite 104
Beaumont, TX 77701

FedEx

Envelope

Re... me.

ORIGIN ID:DETA (517) 492-4341
TROI GRAHAM

20048 EVERGREEN MEADOWS RD

SOUTHFIELD, MI 48078
UNITED STATES US

SHIP DATE: 12OCT26
ACTWGT: 0.20 LB
CAD: 8570276/RDSA2710

TO JACK BROOKS
FEDERAL BUILDING US COURTHOUSE
300 WILLOW STREET
SUITE 104
BEAUMONT TX 77701
(999) 999-9999 REF:
INV:
PO: DEPT:

FedEx Express

E

REL# 3786346

TUE - 13 OCT 5:00P
STANDARD OVERNIGHT

TRK# 0201 8785 3953 2127

XA BMNTG

BPTA 77701
TX-US IAH

1521-1008

CLERK, U.S. DISTRICT COURT
RECEIVED

OCT 13 2026

EASTERN DISTRICT OF TEXAS
BEAUMONT, TEXAS

A13 Exhibit

Gmail

Troi Graham <troigraham202@gmail.com>

**UPDATE: CLARIFICATION OF DIRECTIVES / REQUEST TO WITHDRAW - US v. Troi Graham (1:25-cr-00038)**

1 message

**Troi Graham** <troigraham202@gmail.com> Thu, Jun 11, 2026 at 1:49 AM
To: Thomas Burbank <burbank_hamm@yahoo.com>, cjasupport@txed.uscourts.gov

Dear Mr. Burbank,

I am writing to provide definitive clarification regarding my previous email.

To be completely clear: I am **not** instructing you to withdraw the pending Motion for Continuance (Document 199) from the court's consideration. Because your failure to communicate, failure to properly review discovery, and failure to timely file my Motion to Suppress has left the defense unprepared for a July trial, the additional time requested in that motion is now legally necessary to protect my rights and finalize my evidence. I want that continuance to remain active.

However, while I agree that the **time** must be kept, you cannot remain on this case. The attorney-client relationship is permanently broken. You have directly violated my written instructions, missed critical motion deadlines, I request that you **withdraw as Counsel of Record**.

You may state in your motion to withdraw that additional time is required for the defense to transition to new counsel, which preserves the necessity of the continuance for the court.

Please confirm by the end of business today that you will voluntarily file your Motion to Withdraw. If you do not, I will file my *Pro Se Motion for Substitution of Counsel* directly with the Clerk, making it clear to the Judge that while I agree the continuance must stand to fix the lack of case preparation, I absolutely require substitute counsel to take over.

Sincerely,

Troi Graham troigraham202@gmail.com 517-554-6918

A14 Exibit

Gmail **Troi Graham <troigraham202@gmail.com>**

## Immediate Action Required Before December 30 Hearing

1 message

**Troi Graham** <troigraham202@gmail.com> Mon, Dec 15, 2025 at 1:28 PM
To: burbank_hamm@yahoo.com

Now that the December 30, 2025 court date has been set, I am directing the following actions to be completed **before the hearing**.

1. **Full Discovery**
   Please provide me with my **entire discovery file** immediately, including all materials received from the government and any items still outstanding. If anything is pending, identify what has been requested and the status.

2. **Bill of Particulars**
   File a **Motion for Bill of Particulars** so that the specific allegations, dates, locations, and acts attributed to me are clearly stated.

3. **Grand Jury Materials**
   File the appropriate request/motion seeking **grand jury transcripts and minutes** and provide me with copies of what is filed.

4. **Motion to Dismiss for Improper Venue**
   File a **Motion to Dismiss for Improper Venue**. I am seeking **dismissal, not transfer**, based on the lack of venue and jurisdictional nexus.

These actions are necessary for my defense and must be completed prior to the December 30 hearing. Please confirm **in writing** by **12/17/2025** that each item above has been completed or filed, and provide copies.

Thank you.

Troi Graham

---------- Forwarded message ----------
From: **Thomas Burbank** <burbank_hamm@yahoo.com>
Date: Monday, December 15, 2025
Subject: Troi Graham court date Michigan
To: Troi Graham <troigraham202@gmail.com>

Your federal court date has been re-scheduled to December 30, 2025 at 10:30 a.m.

*Sincerely,*

***Tammy Trahan***
Legal Assistant to
Thomas J. Burbank
6845 Phelan Blvd.
Beaumont, TX 77706
(409) 895-0200 - office
(409) 895-0080-facsimile
burbank_hamm@yahoo.com

A15 Exhibit

On Thursday, December 11, 2025 at 01:44:55 PM CST, Troi Graham <troigraham202@gmail.com> wrote:

Gmail

Troi Graham <troigraham202@gmail.com>

## Request for Supervisory Intervention, Discovery, and Substitution of Counsel

1 message

**Troi Graham** <troigraham202@gmail.com> Wed, Dec 10, 2025 at 1:42 PM
To: cjasupport@txed.uscourts.gov

**Dear Supervising Attorney,**

My name is **Troi Graham**, **1:25-cr-00038-MAC-ZJH-5** and I am represented by a Federal Public Defender/CJA attorney Thomas J Burbank in my federal case. I am writing to respectfully request **supervisory intervention** due to serious communication issues with my assigned attorney that are affecting my ability to prepare my defense.

I have repeatedly asked my attorney for:

- My **full discovery**,
- A request for the **grand jury minutes**, and
- A **Bill of Particulars**,

but I have not received responses or action. These items are crucial for me to understand the specific allegations and to prepare necessary motions related to venue and jurisdiction.

At this point, there has been a complete **breakdown in communication**, and I have been unable to get assistance or information required for my case. This prevents me from receiving effective representation as guaranteed by the Sixth Amendment.

I am requesting the following:

1. **Immediate supervisory review** of my concerns.
2. **Assistance in securing my full discovery**, including any supplemental discovery.
3. Assistance filing or requesting:
    - **Grand Jury Minutes** (under Rule 6(e))
    - **Bill of Particulars** (under Rule 7(f))
4. **Substitution of counsel**, as the communication issues have become unworkable.

I am not seeking delay. I simply need proper legal support and access to the materials I am entitled to so that I can assist in my own defense.

Please advise me of the next steps and anything further you may need from me.

Thank you for your time and attention to this matter.

Respectfully,
**Troi Graham**
517-554-6918
Troigraham202@gmail.com

A16 Exibit

Gmail A17 Ex 15X Troi Graham <troigraham202@gmail.com>

**URGENT: Instruction to Withdraw Motion for Continuance – U.S. v. Graham, Case No. 1:25-cr-00038-MAC**

2 messages

**Troi Graham** <troigraham202@gmail.com> Wed, Jun 10, 2026 at 11:50 PM
To: Thomas Burbank <burbank_hamm@yahoo.com>, cjasupport@txed.uscourts.gov

**Dear Mr. Burbank,**

I am writing because I reviewed the docket and saw that on June 8, 2026, you filed a Motion for Continuance (Document 199) in my case.

I do not consent to this motion, and I am formally instructing you to withdraw it immediately.

As you are aware, I filed a formal *Notice of Demand for Counsel to File Pretrial Motions and Reservation of Rights* (Document 197) with the court clerk, which was officially stamped and entered on June 5, 2026. In that document, I made it explicitly clear that I am fully prepared, that my evidence is organized, and that I expected my Motion to Suppress to be filed by the June 8 deadline.

Your motion states in Section II that you have not had the opportunity to review discovery, and in Section III that you are actively seeking a plea agreement to dispose of the case without a trial. These statements directly contradict my express instructions to you. I am ready for trial, I have solid evidence, and I have absolutely no intention of accepting a plea deal for counts that should be dismissed or suppressed. Furthermore, Section IV states that this continuance tolls my speedy trial clock, which I explicitly refuse to waive.

Because the court's order has not yet been signed by the judge, you must file a notice to withdraw this motion immediately. Please confirm via email once the withdrawal has been filed, and let me know when the actual Motion to Suppress will be submitted to the court.

Sincerely,

Troi Graham

---

**Thomas Burbank** <burbank_hamm@yahoo.com> Thu, Jun 11, 2026 at 10:10 AM
Reply-To: Thomas Burbank <burbank_hamm@yahoo.com>
To: Troi Graham <troigraham202@gmail.com>

Mr. Burbank is trying to reach you and it seems like you cannot hear me, please call the office as soon as you can.

I have called the (517)492-4341 and (517)554-6918

Please call us at (409)895-0200.

Thank you

*Sincerely,*

***Briana Anthony***
Legal Assistant to
Thomas J. Burbank
6845 Phelan Blvd.
Beaumont, TX 77706

(409) 895-0200 - office
(409) 895-0080-facsimile
burbank_hamm@yahoo.com

[Quoted text hidden]

A18 Exhibit

A19 Exhibit

Gmail

Troi Graham <troigraham202@gmail.com>

## Urgent: Assistance Needed for Transfer of Texas Case to Michigan

2 messages

**Troi Graham** <troigraham202@gmail.com> Tue, Nov 25, 2025 at 3:51 PM
To: Natasha_Webster@fd.org
Cc: burbank_hamm@yahoo.com

Hi Ms. Webster this is Troi Graham,

I hope you're doing well. I'm reaching out because this matter is time-sensitive. When I appeared in court here in Michigan, the judge informed me that I may request to have my Texas case transferred to Michigan due to my circumstances.

You are my court-appointed attorney in Michigan, and I have copied my Texas court-appointed attorney on this email as well. He is unsure of the process the judge referred to, and we want to make sure we are following the correct procedure.

We urgently need your assistance in confirming what forms, motions, or documents the Texas attorney must file in order to start the transfer request. I want to make sure there are no delays or mistakes in the process.

Your guidance is greatly appreciated, and I'm asking for your help so we can move forward immediately.

Thank you,
**Troi Graham**
517-554-6918

---

**Natasha Webster** <Natasha_Webster@fd.org> Wed, Nov 26, 2025 at 11:50 AM
To: Troi Graham <troigraham202@gmail.com>
Cc: "burbank_hamm@yahoo.com" <burbank_hamm@yahoo.com>

Hi Ms. Graham – You would need to ask the prosecutor in the Eastern District of Michigan and the prosecutor in the charging district (in your case Texas) if the case can be transferred to Michigan but it can only be transferred if both prosecutors agree and it is only for the purpose of entering a guilty plea. This is set forth in Federal Rule of Criminal Procedure 20.

**From:** Troi Graham <troigraham202@gmail.com>
**Sent:** Tuesday, November 25, 2025 3:51 PM
**To:** Natasha Webster <Natasha_Webster@fd.org>
**Cc:** burbank_hamm@yahoo.com
**Subject:** Urgent: Assistance Needed for Transfer of Texas Case to Michigan

You don't often get email from troigraham202@gmail.com. Learn why this is important

EXTERNAL SENDER

[Quoted text hidden]

A20 Exhibit

Gmail

Troi Graham <troigraham202@gmail.com>

# Request to Challenge Venue/Jurisdiction in My Case

2 messages

**Troi Graham** <troigraham202@gmail.com> Wed, Nov 26, 2025 at 12:10 PM
To: burbank_hamm@yahoo.com

I hope you're well. I wanted to follow up regarding an issue that is extremely important to me.

After reviewing the information in my case, I believe there is a strong basis to challenge **venue and jurisdiction** as it relates specifically to me. I have never been to Texas, I have no personal connection to any alleged victims there, and any conduct the government is attributing to me occurred entirely in Michigan. Nothing in the indictment shows that I committed or directed any act toward Texas. I am **100% certain that the individuals listed as victims are not connected to me in any way. I do not know these people, have never had contact with them, and have no personal or factual ties to them.** Any conduct the government is attributing to me occurred entirely in Michigan.

Because of that, I want to **formally raise a jurisdiction/venue objection** and make sure this issue is not waived. I am asking that we take the necessary steps to challenge whether Texas is the proper district for prosecuting me. or in the alternative, seek to have my portion of the case dismissed.

I am asking respectfully, but firmly, that this issue be addressed as a priority, and I would appreciate your guidance on the next steps to take.

Thank you for your representation and for helping make sure my rights are protected.

Respectfully,
**Troi Graham**

On Wednesday, November 26, 2025, Natasha Webster <Natasha_Webster@fd.org> wrote:

> Hi Ms. Graham – You would need to ask the prosecutor in the Eastern District of Michigan and the prosecutor in the charging district (in your case Texas) if the case can be transferred to Michigan but it can only be transferred if both prosecutors agree and it is only for the purpose of entering a guilty plea. This is set forth in Federal Rule of Criminal Procedure 20.
>
> **From:** Troi Graham <troigraham202@gmail.com>
> **Sent:** Tuesday, November 25, 2025 3:51 PM
> **To:** Natasha Webster <Natasha_Webster@fd.org>
> **Cc:** burbank_hamm@yahoo.com
> **Subject:** Urgent: Assistance Needed for Transfer of Texas Case to Michigan
>
> You don't often get email from troigraham202@gmail.com. Learn why this is important
>
> EXTERNAL SENDER
>
> Hi Ms. Webster this is Troi Graham,
>
> I hope you're doing well. I'm reaching out because this matter is time-sensitive. When I appeared in court here in Michigan, the judge informed me that I may request to have my Texas case transferred to Michigan due to my circumstances.

You are my court-appointed attorney in Michigan, and I have copied my Texas court-appointed attorney on this email as well. He is unsure of the process the judge referred to, and we want to make sure we are following the correct procedure.

We urgently need your assistance in confirming what forms, motions, or documents the Texas attorney must file in order to start the transfer request. I want to make sure there are no delays or mistakes in the process.

Your guidance is greatly appreciated, and I'm asking for your help so we can move forward immediately.

Thank you,
**Troi Graham**
517-554-6918

---

**Troi Graham** <troigraham202@gmail.com> Fri, Dec 5, 2025 at 11:58 AM
To: burbank_hamm@yahoo.com

email reminder

On Wed, Nov 26, 2025 at 12:10 PM Troi Graham <troigraham202@gmail.com> wrote:

I hope you're well. I wanted to follow up regarding an issue that is extremely important to me.

After reviewing the information in my case, I believe there is a strong basis to challenge **venue and jurisdiction** as it relates specifically to me. I have never been to Texas, I have no personal connection to any alleged victims there, and any conduct the government is attributing to me occurred entirely in Michigan. Nothing in the indictment shows that I committed or directed any act toward Texas. I am **100% certain that the individuals listed as victims are not connected to me in any way. I do not know these people, have never had contact with them, and have no personal or factual ties to them.** Any conduct the government is attributing to me occurred entirely in Michigan.

Because of that, I want to **formally raise a jurisdiction/venue objection** and make sure this issue is not waived. I am asking that we take the necessary steps to challenge whether Texas is the proper district for prosecuting me. or in the alternative, seek to have my portion of the case dismissed.

I am asking respectfully, but firmly, that this issue be addressed as a priority, and I would appreciate your guidance on the next steps to take.

Thank you for your representation and for helping make sure my rights are protected.

Respectfully,
**Troi Graham**

On Wednesday, November 26, 2025, Natasha Webster <Natasha_Webster@fd.org> wrote:

Hi Ms. Graham – You would need to ask the prosecutor in the Eastern District of Michigan and the prosecutor in the charging district (in your case Texas) if the case can be transferred to Michigan but it can only be transferred if both prosecutors agree and it is only for the purpose of entering a guilty plea. This is set forth in Federal Rule of Criminal Procedure 20.

A21 Exhibit

**From:** Troi Graham <troigraham202@gmail.com>
**Sent:** Tuesday, November 25, 2025 3:51 PM
**To:** Natasha Webster <Natasha_Webster@fd.org>
**Cc:** burbank_hamm@yahoo.com
**Subject:** Urgent: Assistance Needed for Transfer of Texas Case to Michigan

You don't often get email from troigraham202@gmail.com. Learn why this is important

EXTERNAL SENDER

Hi Ms. Webster this is Troi Graham,

I hope you're doing well. I'm reaching out because this matter is time-sensitive. When I appeared in court here in Michigan, the judge informed me that I may request to have my Texas case transferred to Michigan due to my circumstances.

You are my court-appointed attorney in Michigan, and I have copied my Texas court-appointed attorney on this email as well. He is unsure of the process the judge referred to, and we want to make sure we are following the correct procedure.

We urgently need your assistance in confirming what forms, motions, or documents the Texas attorney must file in order to start the transfer request. I want to make sure there are no delays or mistakes in the process.

Your guidance is greatly appreciated, and I'm asking for your help so we can move forward immediately.

Thank you,
**Troi Graham**
517-554-6918

A22

Exibit

Gmail — Troi Graham <troigraham202@gmail.com>

# Immediate Action Required Before December 30 Hearing

1 message

**Troi Graham** <troigraham202@gmail.com> — Mon, Dec 15, 2025 at 1:28 PM
To: burbank_hamm@yahoo.com

Now that the December 30, 2025 court date has been set, I am directing the following actions to be completed **before the hearing**.

1. **Full Discovery**
   Please provide me with my **entire discovery file** immediately, including all materials received from the government and any items still outstanding. If anything is pending, identify what has been requested and the status.

2. **Bill of Particulars**
   File a **Motion for Bill of Particulars** so that the specific allegations, dates, locations, and acts attributed to me are clearly stated.

3. **Grand Jury Materials**
   File the appropriate request/motion seeking **grand jury transcripts and minutes** and provide me with copies of what is filed.

4. **Motion to Dismiss for Improper Venue**
   File a **Motion to Dismiss for Improper Venue**. I am seeking **dismissal, not transfer**, based on the lack of venue and jurisdictional nexus.

These actions are necessary for my defense and must be completed prior to the December 30 hearing. Please confirm **in writing** by **12/17/2025** that each item above has been completed or filed, and provide copies.

Thank you.

Troi Graham

---------- Forwarded message ----------
From: **Thomas Burbank** <burbank_hamm@yahoo.com>
Date: Monday, December 15, 2025
Subject: Troi Graham court date Michigan
To: Troi Graham <troigraham202@gmail.com>

A23 Exhibit

Your federal court date has been re-scheduled to December 30, 2025 at 10:30 a.m.

*Sincerely,*

***Tammy Trahan***
Legal Assistant to
Thomas J. Burbank
6845 Phelan Blvd.
Beaumont, TX 77706
(409) 895-0200 - office
(409) 895-0080-facsimile
burbank_hamm@yahoo.com

On Thursday, December 11, 2025 at 01:44:55 PM CST, Troi Graham <troigraham202@gmail.com> wrote:

Gmail A24 Ex 8

Troi Graham <troigraham202@gmail.com>

**URGENT: Motion to Dismiss (Jurisdiction) + Full Discovery Needed Before Hearing on the 22nd**

1 message

**Troi Graham** <troigraham202@gmail.com> Fri, Dec 5, 2025 at 12:00 PM
To: burbank_hamm@yahoo.com

Hi **Mr. Burbank**,

I'm reaching out again because I have not received a response, and my next court hearing is scheduled for **the 22nd**. I must prepare in advance, and the issues below cannot wait any longer.

I urgently need your assistance with the following:

**1. Motion to Dismiss for Lack of Jurisdiction**
I am requesting that you file a **motion to dismiss the case based on lack of jurisdiction.**

**2. Full Discovery – Immediately**
I still have not received **any** of my discovery. I need to review the full evidence packet before the 22nd, including:

- Police reports
- Witness statements
- Any video/audio footage
- Investigative materials
- Any documents or evidence the State intends to rely on

This is essential for me to properly prepare for the hearing.

Please confirm that you received this message. I have been trying to reach you for over a week with no response, and I am extremely concerned given how close the hearing date is.

Thank you,

A25 ✓

Gmail

Troi Graham <troigraham202@gmail.com>

# DEMAND FOR VOLUNTARY WITHDRAWAL / CONTINUANCE TO STAND - US v. Troi Graham (1:25-cr-00038)

**Troi Graham** <troigraham202@gmail.com> Thu, Jun 11, 2026 at 1:55 AM
To: Thomas Burbank <burbank_hamm@yahoo.com>, cjasupport@txed.uscourts.gov

Dear Mr. Burbank,

I am writing to provide definitive clarification regarding my previous email.

*To be completely clear: I am* **not** *instructing you to withdraw the pending* Motion for Continuance (Document 199) from the court's consideration. Because your failure to communicate, failure to properly review discovery, and failure to timely file my Motion to Suppress *left me entirely defenseless for a July trial date*, the additional time requested in that motion is now legally necessary to protect my rights and finalize my evidence. I want that continuance to remain active.

However, while I agree that the **time** must be kept, you cannot remain on this case. The way you have left me defenseless is completely unacceptable. You have directly violated my written instructions, missed critical motion deadlines, and misrepresented my intentions to the Court by falsely claiming this extra time is for plea negotiations.The attorney-client relationship is permanently broken.

Therefore, I am formally instructing you to **immediately file a Motion to Withdraw as Counsel of Record**.

You may state in your motion to withdraw that additional time is required for the defense to transition to new counsel, which preserves the necessity of the continuance for the court's calendar.

Please confirm by the end of business today that you will voluntarily file your Motion to Withdraw. If you do not, I will file my *Pro Se Motion for Substitution of Counsel* directly with the Clerk, making it clear to the Judge that while I agree the continuance must stand to fix the total lack of case preparation, I absolutely require substitute counsel to take over.

Sincerely,

Troi Graham troigraham202@gmail.com 517-554-6918

Gmail A26 Exhibit

Troi Graham <troigraham202@gmail.com>

## Request for Transfer of Case to Michigan – Defendant: Thomas J. Burbank Court Date: December 3, 2025

**Troi Graham** <troigraham202@gmail.com> Fri, Nov 21, 2025 at 4:10 PM
To: burbank_hamm@yahoo.com

Hi Thomas J. Burbank ,

I wanted to reach out regarding my upcoming court date on December 3rd. I was arrested on an indictment in Michigan for Texas, and I would like to request that my case be transferred to Michigan , I was told Michigan is willing to accept the case.

I am the primary caregiver for my two disabled children, who require constant care, and I am also enrolled in a long-term mental health program here in Michigan. In addition, I am currently in school for software engineering and I work here as well. Traveling out of state repeatedly would create a severe hardship for both me and my children.

Can you please request that the case be transferred to Michigan before the December 3rd hearing.

Thank you for your help.

Gmail A27 Exhibit

Troi Graham <troigraham202@gmail.com>

# UPDATE: CLARIFICATION OF DIRECTIVES / REQUEST TO WITHDRAW - US v. Troi Graham (1:25-cr-00038)

**Troi Graham** <troigraham202@gmail.com> Thu, Jun 11, 2026 at 1:49 AM
To: Thomas Burbank <burbank_hamm@yahoo.com>, cjasupport@txed.uscourts.gov

Dear Mr. Burbank,

I am writing to provide definitive clarification regarding my previous email.

To be completely clear: I am **not** instructing you to withdraw the pending Motion for Continuance (Document 199) from the court's consideration. Because your failure to communicate, failure to properly review discovery, and failure to timely file my Motion to Suppress has left the defense unprepared for a July trial, the additional time requested in that motion is now legally necessary to protect my rights and finalize my evidence. I want that continuance to remain active.

However, while I agree that the **time** must be kept, you cannot remain on this case. The attorney-client relationship is permanently broken. You have directly violated my written instructions, missed critical motion deadlines, I request that you **withdraw as Counsel of Record**.

You may state in your motion to withdraw that additional time is required for the defense to transition to new counsel, which preserves the necessity of the continuance for the court.

Please confirm by the end of business today that you will voluntarily file your Motion to Withdraw. If you do not, I will file my *Pro Se Motion for Substitution of Counsel* directly with the Clerk, making it clear to the Judge that while I agree the continuance must stand to fix the lack of case preparation, I absolutely require substitute counsel to take over.

Sincerely,

Troi Graham troigraham202@gmail.com 517-554-6918

A28 Ex 8

Gmail

Troi Graham <troigraham202@gmail.com>

**THIRD URGENT REQUEST !!!!**

**Troi Graham** <troigraham202@gmail.com>
To: Thomas Burbank <burbank_hamm@yahoo.com>, cjasupport@txed.uscourts.gov

Tue, Jun 2, 2026 at 7:24 PM

**Dear Thomas Burbank,**

I am writing to you today to formally request that you file a Motion to Suppress regarding all evidence in my case.

As you are aware, the court's scheduling order sets the deadline for filing pretrial motions, including a Motion to Suppress, for June 8, 2026. This evidence is critical to my defense, and I believe there are clear legal grounds for suppression.

It is my constitutional right to have these issues litigated before trial.

If I do not see that you have filed any motions in my case since it has started. I will be forced to notify the Court of my request and your failure to act, as this jeopardizes my defense and my constitutional rights.

I expect a prompt response regarding this critical matter.

Sincerely,

Troi Graham

Gmail A29 Exhibit

Troi Graham <troigraham202@gmail.com>

## Contact Infomation

2 messages

**Thomas Burbank** <burbank_hamm@yahoo.com> Tue, Feb 10, 2026 at 3:43 PM
Reply-To: Thomas Burbank <burbank_hamm@yahoo.com>
To: Troi Graham <troigraham202@gmail.com>

Good afternoon, Mr. Burbank tried to reach out via telephone, and could not get ahold of you.

Could you please contact the office at your earliest convenience to update your contact Information.

Thank you for your attention to this matter.

*Sincerely,*

***Briana Anthony***
Legal Assistant to
Thomas J. Burbank
6845 Phelan Blvd.
Beaumont, TX 77706
(409) 895-0200 - office
(409) 895-0080-facsimile
burbank_hamm@yahoo.com

**Troi Graham** <troigraham202@gmail.com> Tue, Feb 10, 2026 at 3:55 PM
To: Thomas Burbank <burbank_hamm@yahoo.com>

I will call you now .
[Quoted text hidden]

Gmail

A30

**Troi Graham <troigraham202@gmail.com>**

## Contact Infomation

**Thomas Burbank** <burbank_hamm@yahoo.com> Tue, Feb 10, 2026 at 3:43 PM
Reply-To: Thomas Burbank <burbank_hamm@yahoo.com>
To: Troi Graham <troigraham202@gmail.com>

Good afternoon, Mr. Burbank tried to reach out via telephone, and could not get ahold of you.

Could you please contact the office at your earliest convenience to update your contact Information.

Thank you for your attention to this matter.

*Sincerely,*

***Briana Anthony***
Legal Assistant to
Thomas J. Burbank
6845 Phelan Blvd.
Beaumont, TX 77706
(409) 895-0200 - office
(409) 895-0080-facsimile
burbank_hamm@yahoo.com

SIGNED at Beaumont, Texas, this 20th day of October, 2026.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

A31

**UNITED STATES DISTRICT COURT** **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CRIMINAL ACTION NO. 1:25CR38 |
| | § | |
| BROOKE CRAWFORD (2) | § | |
| MARK DAY (3) | § | |
| RIAN GRAHAM (4) | § | |
| TROI GRAHAM (5) | § | |
| KELLEE SIMS (6) | § | |
| RAYSEAN GRAHAM (7) | § | |
| SYLVIA SHANN (8) | § | |

## AMENDED PRETRIAL ORDER

This case is reset for Final Pretrial Conference on **November 30, 2026,** at 9:00 a.m. in Courtroom #3, United States Courthouse, Beaumont, Texas. Jury Selection and Jury Trial will begin immediately and continue every day thereafter until completion.

The following deadlines shall apply in this case. Failure to comply with the court's deadlines may result in the imposition of sanctions.

| | |
|---|---|
| November 2, 2026 | Motion(s) to suppress evidence shall be filed with the court. |
| November 9, 2026 | Motion(s) for continuance shall be filed with the court. |
| November 9, 2026 | Defense Counsel shall electronically file a notification of plea agreement or intent to proceed to trial. A copy of the plea agreement and/or factual basis shall be emailed to the court administrator. No plea agreement will be honored by the court, and Defendant(s) may not receive a points reduction for acceptance of responsibility after this deadline. |
| November 12, 2026 | The Government shall deliver proposed jury instructions to Defense Counsel. |
| November 16, 2026<br>By 12:00 p.m. | Defense Counsel shall deliver to the Government any additional jury instructions proposed. The submission must be made jointly if two or more Defendants are represented by separate counsel. |

| | |
|---|---|
| November 16, 2026<br>By 12:00 p.m. | Defense Counsel and the Government shall confer on agreed jury instructions. |
| November 16, 2026<br>By 12:00 p.m. | Defense Counsel and the Government shall: |

A. File any motions in limine and any other pretrial motions. Written responses should be filed as soon as possible, or as otherwise directed by the court;

B. File agreed jury instructions;

C. File any proposed instructions that could not be agreed upon, citing authority for each instruction. Any party seeking to file proposed jury instructions after the deadline must obtain leave of court;

D. File any objections to the proposed jury instructions. Objections must be written, specific, cite authority, and include any alternative instructions;

E. File proposed voir dire questions;

F. Provide the court a list of witnesses. The witness list shall include the city, state of residency, title, and organization association (if applicable) of each witness; and

G. Each party shall provide the court with three (3) sets of its exhibit list and color copies of each exhibit. Each set should be contained in a three-ring binder, with numbered tabs corresponding to the exhibit numbers. Exhibits shall be premarked with the exhibit number. All audio and video exhibits shall be clearly labeled and provided in digital format on one disc or USB. Photographs of physical exhibits must also be provided.

SIGNED at Beaumont, Texas, this 20th day of October, 2026.

Marcia A. Crone

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

A33 Exhibit

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

A34 EX 18X

UNITED STATES OF AMERICA
v.
TROI GRAHAM
Case No. 1:25-CR-38-5

MOTION TO SUBSTITUTE COUNSEL AND TO EXTEND TIME TO FILE PRETRIAL MOTIONS

Defendant, Troi Graham, respectfully moves this Court for an Order:

1. Substituting current court-appointed counsel, and
2. Extending or tolling the 30-day deadline for filing pretrial motions set forth in the Court's January 6, 2026 Discovery Order.

I. BACKGROUND

On January 6, 2026, the Court entered a Discovery Order requiring the Government to produce discovery and setting a 30-day deadline for filing defenses, objections, and motions capable of determination without trial.

Since that time, Defendant has made multiple written requests to appointed counsel for an estimated timeline regarding receipt of discovery.

Counsel's office has repeatedly stated that discovery is "being compiled" but has not provided an estimated completion date, and no discovery has been provided to Defendant as of January 21, 2026.

Defendant also contacted supervisory staff for assistance regarding the lack of response and discovery timeline but received no response.

Because discovery has not been provided, Defendant is unable to meaningfully review the evidence, evaluate possible defenses, or determine which motions should be filed within the Court's 30-day deadline.

II. GROUNDS FOR SUBSTITUTION OF COUNSEL

There has been a breakdown in communication between Defendant and appointed counsel regarding the status of discovery, the timeline for receipt, and defense strategy during the 30-day motion window.

Defendant is unable to meaningfully participate in preparation of his defense without access to discovery or timely communication.

Defendant respectfully requests appointment of new counsel so that his rights can be protected and the case can proceed fairly and efficiently.

III. GROUNDS FOR EXTENSION / TOLLING OF 30-DAY DEADLINE

The Court's January 6, 2026 Order requires pretrial motions to be filed within 30 days.

Because discovery has not been provided, Defendant cannot review evidence, identify legal issues, determine appropriate motions, or preserve defenses.

Defendant therefore respectfully requests that the Court extend or toll the 30-day motion deadline until discovery is produced and new counsel is appointed.

IV. REQUEST FOR RELIEF

WHEREFORE, Defendant respectfully requests that the Court:

A. Grant substitution of court-appointed counsel;
B. Extend or toll the 30-day pretrial motion deadline; and
C. Grant any further relief the Court deems just and proper.

Respectfully submitted,

Troi Graham
Defendant, Pro Se
3829 Roosevelt
Dearborn, MI 48124
Email: troigraham202@gmail.com

A35 Exhibit

C060

...ro i Graham
...8829 Roosevelt
...earborn Mi 48124

SHIP TO:
STE 104
300 WILLOW ST
BEAUMONT TX 77701-2217

USPS TRACKING® #

9505 5120 0821 6021 8891 49

Beaumont Eastern District of Texa
District Court
300 Willow Streest suite 104
Beaumont Texas, 7770 1

CLERK, U.S. DISTRICT COURT
RECEIVED
JAN 27 2026
EASTERN DISTRICT OF TEXAS
BEAUMONT, TEXAS

A36

Exhibit

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

A37 EX158

UNITED STATES OF AMERICA

v. CRIMINAL ACTION NO. 1:25-CR-00038-MAC

TROI GRAHAM (5)

DEFENDANT TROI GRAHAM'S RENEWED MOTION TO SUBSTITUTE COUNSEL,
MOTION TO EXTEND PRETRIAL MOTION DEADLINES,
REQUEST FOR DECISION WITHOUT ORAL ARGUMENT,
AND RESERVATION OF RIGHTS

TO THE HONORABLE COURT:

Defendant Troi Graham respectfully submits this Renewed Motion to Substitute Counsel, Motion to Extend Pretrial Motion Deadlines, Request for *Decision Without Oral Argument*, and Reservation of Rights.

This motion is made in good faith to protect Defendant's constitutional rights under the Fifth and Sixth Amendments and to ensure meaningful ability to participate in preparation of the defense.

I. PROCEDURAL BACKGROUND

1. Defendant previously moved for substitution of counsel and additional time to prepare pretrial motions.
2. The Court denied the prior motion as premature, subject to reassertion following entry of the Protective Order governing discovery.
3. The Court's current scheduling order sets June 8, 2026, as the deadline for filing suppression motions and June 22, 2026, as the deadline for continuance motions.

*II.* SIXTH AMENDMENT BASIS FOR RELIEF

4. *The Sixth Amendment guarantees the right to effective assistance of counsel, which* includes the ability to communicate meaningfully with counsel and participate in defense preparation.
5. Where communication has broken down to the extent that it materially interferes with defense preparation, substitution of counsel may be warranted.

III. HISTORY OF COMMUNICATION BREAKDOWN

6. Over the past approximately six (6) months, Defendant has made repeated good-faith efforts to communicate with counsel regarding case preparation, including review of

discovery, evaluation of potential pretrial motions, and preparation for the suppression-motion deadline.

7. These communications included requests to review discovery materials and to discuss the government's evidence and potential pretrial issues necessary for adequate defense preparation.
8. Despite these repeated efforts, Defendant has not received meaningful or sufficient consultation regarding key aspects of the defense, including substantive discussion of discovery and pretrial motion strategy.
9. As a result, Defendant is unable to meaningfully participate in defense preparation or adequately assist counsel in preparing for critical pretrial deadlines, including the upcoming motion-to-suppress deadline.
10. Defendant respectfully submits that the communication breakdown is not a disagreement over legal strategy, but a failure of communication that materially impairs the ability to prepare an effective defense.

## IV. REQUEST FOR EXTENSION OF DEADLINES

11. Defendant respectfully requests a reasonable extension of the deadline for filing suppression motions and related pretrial motions.
12. Additional time is necessary to allow adequate review of discovery and evaluation of potential suppression issues, particularly if substitute counsel is appointed.
13. This request is made in good faith and not for purposes of delay, but to protect Defendant's constitutional rights and prevent prejudice to the defense.

## V. REQUEST FOR DECISION WITHOUT ORAL ARGUMENT

14. Defendant respectfully requests that the Court decide this motion on the written submissions without oral argument if the Court deems appropriate.
15. Defendant represents that personal appearance proceedings would create substantial hardship due to ongoing family medical responsibilities involving Defendant's daughter's epilepsy condition.

## VI. RESERVATION OF RIGHTS

16. Defendant respectfully preserves and reserves all rights concerning counsel, discovery review, suppression issues, venue, jurisdiction, and all other pretrial and constitutional matters.
17. Defendant further preserves all objections and appellate rights relating to any ruling on this motion.

## VII. ADDRESS

Troi Graham
3829 Roosevelt
Dearborn, MI 48124
United States

A38 Exhibit

A39 Exhibit

VIII. WHEREFORE

Defendant respectfully requests that the Court:

A. Appoint substitute counsel;
B. Extend the deadline for suppression motions and related pretrial motions;
C. Decide this motion without oral argument if the Court deems appropriate; and
D. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Troi Graham
Troi Graham
Defendant, Pro Se

CERTIFICATE OF SERVICE

I certify that on May 20, 2026, I mailed a true and correct copy of this motion to counsel for the United States at the U.S. Attorney's Office for the Eastern District of Texas.

Respectfully submitted,

/s/ Troi Graham
Troi Graham

Troi Graham
3829 Roosevelt
Dearborn MI 48124

TROI GRAHAM
(517) 703-7720
THE UPS STORE #3239
4337 E GRAND RIVER AVE
HOWELL MI 48843-6583

1 LBS 1 OF 1
SHP WT: 1 LBS
DATE: 04 JUN 2026

SHIP TO:
JACK BROOKS FEDERAL BLDG & US COURT
UNITED STATES DISTRICT CLERK
STE 104
300 WILLOW ST
BEAUMONT TX 77701

TX 777 0-01

UPS NEXT DAY AIR 1
TRACKING #: 1Z 593 W75 24 3155 8136

BILLING: P/P
SIGNATURE REQUIRED

MHVF3Z1A8CD7V ISH 13.00C ZZD230 EP 20.5V 05/2026

United States [...]s Courthouse
[...] Brooks Federal Bldg a[...]
[3]00 Willow Street Suite 104
[B]eaumont Texas 77701

UNITED STATES DISTRICT CLERK
300 WILLOW ST
STE 104
BEAUMONT TX 77701
P:111 S:111 L:111
AAKI — 1075
8136
1030
1Z593W75243155
JUN 5 08:42:08 2026

CLERK, U.S. DISTRICT COURT
RECEIVED
JUN 05 2026
EASTERN DISTRICT OF TEXAS
BEAUMONT, TEXAS

The UPS Store Smart Label
Tracking #
1Z593W75243155 8136

A40 Exhibit

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS BEAUMONT DIVISION**

**UNITED STATES OF AMERICA v. TROI GRAHAM Case No.: 1:25-cr-00038-MAC**

**NOTICE OF DEMAND FOR COUNSEL TO FILE PRETRIAL MOTIONS AND RESERVATION OF RIGHTS**

Comes now the Defendant, Troi Graham, proceeding *pro se*, and hereby notifies the Court and the Government of the following:

1. **Demand for Filing:** The Defendant has formally requested that his Counsel of Record file a Motion to Suppress Evidence in this matter by the June 8, 2026, scheduling order deadline.
2. **Reservation of Rights:** The Defendant hereby gives notice that he does not waive, and expressly reserves, all challenges to the Court's jurisdiction, the appropriateness of venue, and the admissibility of all evidence presented by the Government.
3. **Preservation of Record:** This Notice is filed to preserve the Defendant's rights and to create a clear record that the Defendant has demanded the filing of necessary pretrial motions.

**CERTIFICATE OF SERVICE** I hereby certify that a true and correct copy of the foregoing Notice was served upon the Counsel of Record and the United States Attorney for the Eastern District of Texas on this 2nd day of June, 2026.

Respectfully submitted,

/s/ Troi Graham Troi Graham 3829 Roosevelt Dearborn, MI 48124 517-554-6918

Signature

A41 Exhibit

A42 Exhibit

Troi Graham
3829 Roosevelt
Dearborn MI 48124

TROI GRAHAM
(517) 703-7720
THE UPS STORE #3239
4337 E GRAND RIVER AVE
HOWELL MI 48843-6583

1 LBS 1 OF 1
SHP WT: 1 LBS
DATE: 04 JUN 2026

SHIP TO:
JACK BROOKS FEDERAL BLDG & US COURT
UNITED STATES DISTRICT CLERK
STE 104
300 WILLOW ST
BEAUMONT TX 77701

TX 777 0-01

UPS NEXT DAY AIR 1
TRACKING #: 1Z 593 W75 24 3155 8136

BILLING: P/P
SIGNATURE REQUIRED

MMVF3Z1A8CDTV ISH 13.00C Z2D23B EP 20.5V 05/2026

United States
Brooks Federal Bldg and ... Courthouse
300 Willow Street Suite 104
Beaumont Texas 77701

UNITED STATES DISTRICT CLERK
300 WILLOW ST
STE 104
BEAUMONT TX 77701
S: 111
P: 111
I: 111
AAKI – 1075
1Z593W7U243155 8136
1030

CLERK, U.S. DISTRICT COURT
RECEIVED
JUN 0 5 2026
EASTERN DISTRICT OF TEXAS
BEAUMONT, TEXAS

The UPS Store Smart Label
Tracking #
1Z593W75243155 8136

A-43 Exhibit

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

UNITED STATES OF AMERICA

v. CRIMINAL ACTION NO. 1:25-CR-00038-MAC

TROI GRAHAM (5)

DEFENDANT TROI GRAHAM'S RENEWED MOTION TO SUBSTITUTE COUNSEL,
MOTION TO EXTEND PRETRIAL MOTION DEADLINES,
REQUEST FOR DECISION WITHOUT ORAL ARGUMENT,
AND RESERVATION OF RIGHTS

TO THE HONORABLE COURT:

Defendant Troi Graham respectfully submits this Renewed Motion to Substitute Counsel, Motion to Extend Pretrial Motion Deadlines, Request for Decision Without Oral Argument, and Reservation of Rights.

This motion is made in good faith to protect Defendant's constitutional rights under the Fifth and Sixth Amendments and to ensure meaningful ability to participate in preparation of the defense.

I. PROCEDURAL BACKGROUND

1. Defendant previously moved for substitution of counsel and additional time to prepare pretrial motions.
2. The Court denied the prior motion as premature, subject to reassertion following entry of the Protective Order governing discovery.
3. The Court's current scheduling order sets June 8, 2026, as the deadline for filing suppression motions and June 22, 2026, as the deadline for continuance motions.

II. SIXTH AMENDMENT BASIS FOR RELIEF

4. The Sixth Amendment guarantees the right to effective assistance of counsel, which includes the ability to communicate meaningfully with counsel and participate in defense preparation.
5. Where communication has broken down to the extent that it materially interferes with defense preparation, substitution of counsel may be warranted.

III. HISTORY OF COMMUNICATION BREAKDOWN

6. Over the past approximately six (6) months, Defendant has made repeated good-faith efforts to communicate with counsel regarding case preparation, including review of

A-44 Exhibit

discovery, evaluation of potential pretrial motions, and preparation for the suppression-motion deadline.

7. These communications included requests to review discovery materials and to discuss the government's evidence and potential pretrial issues necessary for adequate defense preparation.
8. Despite these repeated efforts, Defendant has not received meaningful or sufficient consultation regarding key aspects of the defense, including substantive discussion of discovery and pretrial motion strategy.
9. As a result, Defendant is unable to meaningfully participate in defense preparation or adequately assist counsel in preparing for critical pretrial deadlines, including the upcoming motion-to-suppress deadline.
10. Defendant respectfully submits that the communication breakdown is not a disagreement over legal strategy, but a failure of communication that materially impairs the ability to prepare an effective defense.

IV. REQUEST FOR EXTENSION OF DEADLINES

11. Defendant respectfully requests a reasonable extension of the deadline for filing suppression motions and related pretrial motions.
12. Additional time is necessary to allow adequate review of discovery and evaluation of potential suppression issues, particularly if substitute counsel is appointed.
13. This request is made in good faith and not for purposes of delay, but to protect Defendant's constitutional rights and prevent prejudice to the defense.

V. REQUEST FOR DECISION WITHOUT ORAL ARGUMENT

14. Defendant respectfully requests that the Court decide this motion on the written submissions without oral argument if the Court deems appropriate.
15. Defendant represents that personal appearance proceedings would create substantial hardship due to ongoing family medical responsibilities involving Defendant's daughter's epilepsy condition.

VI. RESERVATION OF RIGHTS

16. Defendant respectfully preserves and reserves all rights concerning counsel, discovery review, suppression issues, venue, jurisdiction, and all other pretrial and constitutional matters.
17. Defendant further preserves all objections and appellate rights relating to any ruling on this motion.

VII. ADDRESS

Troi Graham
3829 Roosevelt
Dearborn, MI 48124
United States

A45 Exhibit

VIII. WHEREFORE

Defendant respectfully requests that the Court:

A. Appoint substitute counsel;
B. Extend the deadline for suppression motions and related pretrial motions;
C. Decide this motion without oral argument if the Court deems appropriate; and
D. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Troi Graham
Troi Graham
Defendant, Pro Se

CERTIFICATE OF SERVICE

I certify that on May 20, 2026, I mailed a true and correct copy of this motion to counsel for the United States at the U.S. Attorney's Office for the Eastern District of Texas.

Respectfully submitted,

/s/ Troi Graham
Troi Graham

Case 1:25-cr-00038-MAC-ZJH Document 198 Filed 06/08/26 Page 4 of 4 PageID #: 1207

Troi Graham
3829 Roosevelt
Dearborn, MI 48124

Retail

U.S. POSTAGE PAID
PM
HOWELL, MI 48843
MAY 23, 2026

77701

$14.50

RDC 03 0 Lb 1.00 Oz S2324M503729-03

United States District Clerk Jack Brooks Federal Building
United States Courthouse
300 Willow Street Suite 104
Beaumont, Texas 77701

CLERK, U.S. DISTRICT COURT
RECEIVED
JUN 08 2026
EASTERN DISTRICT OF TEXAS
BEAUMONT, TEXAS

EXPECTED DELIVERY DAY: 05/28/26
USPS TRACKING® #
9505 5120 0823 6143 8699 35

A46 Exhibit

**UNITED STATES DISTRICT COURT** **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CRIMINAL ACTION NO. 1:25CR38 |
| | § | |
| RILEY GRAHAM (1) | § | |
| BROOKE CRAWFORD (2) | § | |
| MARK DAY (3) | § | |
| RIAN GRAHAM (4) | § | |
| TROI GRAHAM (5) | § | |
| KELLEE SIMS (6) | § | |
| RAYSEAN GRAHAM (7) | § | |
| SYLVIA SHANN (8) | § | |

## AMENDED PRETRIAL ORDER

This case is reset for Final Pretrial Conference on **October 5, 2026** at 9:00 a.m. in Courtroom #3, United States Courthouse, Beaumont, Texas. Jury Selection and Jury Trial will begin immediately and continue every day thereafter until completion.

The following deadlines shall apply in this case. Failure to comply with the court's deadlines may result in the imposition of sanctions.

| | |
|---|---|
| August 28, 2026 | Motion(s) to suppress evidence shall be filed with the court. |
| September 8, 2026 | Motion(s) for continuance shall be filed with the court. |
| September 8, 2026 | Defense Counsel shall electronically file a notification of plea agreement or intent to proceed to trial. A copy of the plea agreement and/or factual basis shall be emailed to the court administrator. No plea agreement will be honored by the court, and Defendant(s) may not receive a points reduction for acceptance of responsibility after this deadline. |
| September 17, 2026 | The Government shall deliver proposed jury instructions to Defense Counsel. |
| September 25, 2026<br>By 12:00 p.m. | Defense Counsel shall deliver to the Government any additional jury instructions proposed. The submission must be made jointly if two or more Defendants are represented by separate counsel. |

| | |
|---|---|
| September 25, 2026<br>By 12:00 p.m. | Defense Counsel and the Government shall confer on agreed jury instructions. |
| September 25, 2026<br>By 12:00 p.m. | Defense Counsel and the Government shall: |

A. File any motions in limine and any other pretrial motions. Written responses should be filed as soon as possible, or as otherwise directed by the court;

B. File agreed jury instructions;

C. File any proposed instructions that could not be agreed upon, citing authority for each instruction. Any party seeking to file proposed jury instructions after the deadline must obtain leave of court;

D. File any objections to the proposed jury instructions. Objections must be written, specific, cite authority, and include any alternative instructions;

E. File proposed voir dire questions;

F. Provide the court a list of witnesses. The witness list shall include the city, state of residency, title, and organization association (if applicable) of each witness; and

G. Each party shall provide the court with three (3) sets of its exhibit list and color copies of each exhibit. Each set should be contained in a three-ring binder, with numbered tabs corresponding to the exhibit numbers. Exhibits shall be premarked with the exhibit number. All audio and video exhibits shall be clearly labeled and provided in digital format on one disc or USB. Photographs of physical exhibits must also be provided.

SIGNED at Beaumont, Texas, this 19th day of August, 2026.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT** **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CRIMINAL ACTION NO. 1:25CR38 |
| | § | |
| BROOKE CRAWFORD (2) | § | |
| MARK DAY (3) | § | |
| RIAN GRAHAM (4) | § | |
| TROI GRAHAM (5) | § | A48 Exhibit |
| KELLEE SIMS (6) | § | |
| RAYSEAN GRAHAM (7) | § | |
| SYLVIA SHANN (8) | § | |

## AMENDED PRETRIAL ORDER

This case is reset for Final Pretrial Conference on **November 12, 2026,** at 9:00 a.m. in Courtroom #3, United States Courthouse, Beaumont, Texas. Jury Selection and Jury Trial will begin immediately and continue every day thereafter until completion.

The following deadlines shall apply in this case. Failure to comply with the court's deadlines may result in the imposition of sanctions.

| | |
|---|---|
| September 28, 2026 | Motion(s) to suppress evidence shall be filed with the court. |
| October 13, 2026 | Motion(s) for continuance shall be filed with the court. |
| October 13, 2026 | Defense Counsel shall electronically file a notification of plea agreement or intent to proceed to trial. A copy of the plea agreement and/or factual basis shall be emailed to the court administrator. No plea agreement will be honored by the court, and Defendant(s) may not receive a points reduction for acceptance of responsibility after this deadline. |
| October 16, 2026 | The Government shall deliver proposed jury instructions to Defense Counsel. |
| October 20, 2026<br>By 12:00 p.m. | Defense Counsel shall deliver to the Government any additional jury instructions proposed. The submission must be made jointly if two or more Defendants are represented by separate counsel. |

| | |
|---|---|
| October 20, 2026<br>By 12:00 p.m. | Defense Counsel and the Government shall confer on agreed jury instructions. |
| October 20, 2026<br>By 12:00 p.m. | Defense Counsel and the Government shall: |

A. File any motions in limine and any other pretrial motions. Written responses should be filed as soon as possible, or as otherwise directed by the court;

B. File agreed jury instructions;

C. File any proposed instructions that could not be agreed upon, citing authority for each instruction. Any party seeking to file proposed jury instructions after the deadline must obtain leave of court;

D. File any objections to the proposed jury instructions. Objections must be written, specific, cite authority, and include any alternative instructions;

E. File proposed voir dire questions;

F. Provide the court a list of witnesses. The witness list shall include the city, state of residency, title, and organization association (if applicable) of each witness; and

G. Each party shall provide the court with three (3) sets of its exhibit list and color copies of each exhibit. Each set should be contained in a three-ring binder, with numbered tabs corresponding to the exhibit numbers. Exhibits shall be premarked with the exhibit number. All audio and video exhibits shall be clearly labeled and provided in digital format on one disc or USB. Photographs of physical exhibits must also be provided.

SIGNED at Beaumont, Texas, this 11th day of September, 2026.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

Case 1:25-cr-00038-MAC-ZJH Document 207 Filed 06/23/26 Page 1 of 2 PageID #: 1288

A50 5X?28

**UNITED STATES DISTRICT COURT** **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CRIMINAL ACTION NO. 1:25CR38 |
| | § | |
| RILEY GRAHAM (1) *aka David Drake* | § | |
| BROOKE CRAWFORD (2) | § | |
| MARK DAY (3) | § | |
| RIAN GRAHAM (4) | § | |
| TROI GRAHAM (5) | § | |
| KELLEE SIMS (6) | § | |
| RAYSEAN GRAHAM (7) SYLVIA | § | |
| SHANN (8) | § | |

**AMENDED PRETRIAL ORDER**

This case is reset for Final Pretrial Conference on **September 8, 2026** at 9:00 a.m. in Courtroom #3, United States Courthouse, Beaumont, Texas. Jury Selection and Jury Trial will begin immediately and continue every day thereafter until completion.

The following deadlines shall apply in this case. Failure to comply with the court's deadlines may result in the imposition of sanctions.

| | |
|---|---|
| August 3, 2026 | Motion(s) to suppress evidence shall be filed with the court. |
| August 17, 2026 | Motion(s) for continuance shall be filed with the court. |
| August 17, 2026 | Defense Counsel shall electronically file a notification of plea agreement or intent to proceed to trial. A copy of the plea agreement and/or factual basis shall be emailed to the court administrator. No plea agreement will be honored by the court, and Defendant(s) may not receive a points reduction for acceptance of responsibility after this deadline. |
| August 28, 2026 | The Government shall deliver proposed jury instructions to Defense Counsel. |
| August 31, 2026 By 12:00 p.m. | Defense Counsel shall deliver to the Government any additional jury instructions proposed. The submission must be made jointly if two or more Defendants are represented by separate counsel. |

| | |
|---|---|
| August 31, 2026<br>By 12:00 p.m. | Defense Counsel and the Government shall confer on agreed jury instructions. |
| August 31, 2026<br>By 12:00 p.m. | Defense Counsel and the Government shall: |

A. File any motions in limine and any other pretrial motions. Written responses should be filed as soon as possible, or as otherwise directed by the court;

B. File agreed jury instructions;

C. File any proposed instructions that could not be agreed upon, citing authority for each instruction. Any party seeking to file proposed jury instructions after the deadline must obtain leave of court;

D. File any objections to the proposed jury instructions. Objections must be written, specific, cite authority, and include any alternative instructions;

E. File proposed voir dire questions;

F. Provide the court a list of witnesses. The witness list shall include the city, state of residency, title, and organization association (if applicable) of each witness; and

G. Each party shall provide the court with three (3) sets of its exhibit list and color copies of each exhibit. Each set should be contained in a three-ring binder, with numbered tabs corresponding to the exhibit numbers. Exhibits shall be premarked with the exhibit number. All audio and video exhibits shall be clearly labeled and provided in digital format on one disc or USB. Photographs of physical exhibits must also be provided.

SIGNED at Beaumont, Texas, this 23rd day of June, 2026.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT** **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CRIMINAL ACTION NO. 1:25CR38 |
| | § | |
| DAVID DRAKE (1) | § | |
| BROOKE CRAWFORD (2) | § | |
| MARK DAY (3) | § | |
| RIAN GRAHAM (4) | § | |
| TROI GRAHAM (5) | § | |

## AMENDED PRETRIAL ORDER

This case is reset for Final Pretrial Conference on **July 13, 2026** at 9:00 a.m. in Courtroom #3, United States Courthouse, Beaumont, Texas. Jury Selection and Jury Trial will begin immediately and continue every day thereafter until completion.

The following deadlines shall apply in this case. Failure to comply with the court's deadlines may result in the imposition of sanctions.

| | |
|---|---|
| June 8, 2026 | Motion(s) to suppress evidence shall be filed with the court. |
| June 22, 2026 | Motion(s) for continuance shall be filed with the court. |
| June 22, 2026 | Defense Counsel shall electronically file a notification of plea agreement or intent to proceed to trial. A copy of the plea agreement and/or factual basis shall be emailed to the court administrator. No plea agreement will be honored by the court, and Defendant(s) may not receive a points reduction for acceptance of responsibility after this deadline. |
| June 30, 2026 | The Government shall deliver proposed jury instructions to Defense Counsel. |
| July 1, 2026<br>By 12:00 p.m. | Defense Counsel shall deliver to the Government any additional jury instructions proposed. The submission must be made jointly if two or more Defendants are represented by separate counsel. |
| July 3, 2026<br>By 12:00 p.m. | Defense Counsel and the Government shall confer on agreed jury instructions. |

| | |
|---|---|
| July 3, 2026<br>By 12:00 p.m. | Defense Counsel and the Government shall: |

A. File any motions in limine and any other pretrial motions. Written responses should be filed as soon as possible, or as otherwise directed by the court;

B. File agreed jury instructions;

C. File any proposed instructions that could not be agreed upon, citing authority for each instruction. Any party seeking to file proposed jury instructions after the deadline must obtain leave of court;

D. File any objections to the proposed jury instructions. Objections must be written, specific, cite authority, and include any alternative instructions;

E. File proposed voir dire questions;

F. Provide the court a list of witnesses. The witness list shall include the city, state of residency, title, and organization association (if applicable) of each witness; and

G. Each party shall provide the court with three (3) sets of its exhibit list and color copies of each exhibit. Each set should be contained in a three-ring binder, with numbered tabs corresponding to the exhibit numbers. Exhibits shall be premarked with the exhibit number. All audio and video exhibits shall be clearly labeled and provided in digital format on one disc or USB. Photographs of physical exhibits must also be provided.

SIGNED at Beaumont, Texas, this 25th day of February, 2026.

Marcia A. Crone

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | |
| | § | CASE NUMBER: 1:25CR38-5 |
| TROI GRAHAM | § | |

# DISCOVERY ORDER

It is **ORDERED**:

## I. PRETRIAL DISCOVERY AND INSPECTION

A. Within five (5) days after the arraignment, or date of receipt of this order by the Defendant, whichever occurs first, the United States Attorney or Assistant United States Attorney prosecuting the case (hereinafter collectively "United States Attorney") and the Defendant's attorney shall confer; whereupon, the United States of America (hereinafter "the Government") shall:

(1) Permit Defendant's attorney to inspect and copy or photograph any relevant written or recorded statements or confessions made by the Defendant, or copies thereof, within the possession, custody or control of the Government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the Government;

(2) Permit Defendant's attorney to inspect and copy or photograph that portion of any written record containing the substance of any relevant oral statement made by the Defendant whether before or after arrest in response to interrogation by any person then known to the Defendant to be a Government agent;

(3) Permit Defendant's attorney to inspect and copy or photograph any recorded testimony of the Defendant before a grand jury which relates to the offense charged;

(4) Disclose to Defendant's attorney the substance of any other relevant oral statement made by the Defendant whether before or after arrest in response to interrogation by any person then known by the Defendant to be a Government agent if the Government intends to use that statement at trial;

(5) Disclose to the Defendant any copy of the Defendant's prior criminal record, if any, as is within the possession, custody, or control of the Government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the Government, including the Federal Bureau of Investigation Identification Sheet;

(6) Permit Defendant's attorney to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the Government, and which are material to the preparation of the Defendant's defense or are intended for use by the Government as evidence in chief at the trial, or were obtained from or belong to the Defendant;

(7) Permit Defendant's attorney to inspect and copy or photograph any relevant results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the case, or copies thereof, within the possession, custody or control of the Government, the existence of which is known, or by the exercise of due diligence may become known to the attorney for the Government, and which are material to the preparation of the defense or are intended for use by the Government as evidence in chief at the trial;

(8) With the exception of *Giglio* material, permit Defendant's attorney to inspect, copy or photograph any evidence within the ambit of *Brady v. Maryland* (evidence which might tend to exculpate Defendant, mitigate punishment, or impeach testimony which may be determinative of Defendant's guilt or innocence). **Pursuant to the Due Process Protections Act, and Rule 5(f)(1) of the Federal Rules of Criminal Procedure, the court confirms the United States' obligation to produce all exculpatory evidence to the defendant pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and orders it to do so. Failing to do so in a timely manner may result in consequences, including, but not limited to, exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, or sanctions by the court.** Unless good cause is shown, *Giglio* material must be provided to the Defendant's attorney at least three (3) days prior to trial;

(9) Disclose to Defendant's attorney evidence of the Defendant's other crimes, wrongs, or acts which -- although inadmissible to prove the Defendant's bad character -- the Government believes to be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, concerning the instant charge; and

(10) Disclose to Defendant's attorney a written summary of testimony the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence, during its case in chief at trial, including witness opinions, bases and reasons therefore, and the witnesses' qualifications.[1]

B. If, in the judgment of the United States Attorney, it would not be in the interests of justice to make any one or more disclosures set forth in paragraph "A" and requested by Defendant's counsel, the declination shall be in writing, directed to Defendant's counsel, and signed personally by the United States Attorney, specifying the types of disclosures that are declined. If the Defendant seeks to challenge the declination, Defendant shall proceed pursuant to paragraph "C" below.

C. If additional discovery or inspection is sought, Defendant's attorney shall confer with the appropriate United States Attorney within ten (10) days of the arraignment, or date of receipt of this Order by the Defendant, whichever occurs first, with a view to satisfying these requests in a cooperative atmosphere without recourse to the court. The request may be oral or written and the United States Attorney shall respond in a like manner.

D. In the event Defendant thereafter moves for additional discovery or inspection, Defendant's motion shall be filed within twenty (20) days after the arraignment, or date of receipt of this order by the Defendant, whichever occurs first. It shall contain:

(1) the statement that the prescribed conference was held;
(2) the date of said conference;
(3) the name of the United States Attorney with whom conference was held; and

1 This does not replace or mitigate the expert disclosure obligatio be triggered by each party's request.

A56

A57

(4) the statement that agreement could not be reached concerning the discovery or inspection that is the subject of Defendant's motion.

The court cautions counsel that filing unnecessary motions may result in imposition of sanctions. Counsel are to present by motion only genuine issues actually in dispute which counsel are unable to resolve in conference.

E. Upon Government's compliance with the provisions of paragraph "A" of this Order, the Defendant shall permit the Government to inspect and copy or photograph:

(1) Books, papers, documents, photographs, tangible objects, or copies or portions thereof, which are within the possession, custody, or control of the Defendant and which the Defendant intends to introduce as evidence in chief at the trial; and

(2) Any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of the Defendant, which the Defendant intends to introduce as evidence in chief at the trial or which were prepared by a witness whom the Defendant intends to call at the trial when the results or reports relate to that witness' testimony.

F. Any duty of disclosure and discovery set forth in this Order is a continuing one.

G. Any disclosure granted by the Government pursuant to this Order of material within the purview of FED.R.CRIM.P. 16(a)(2) and 16(b) and FED.R.EVID. 404(b) shall be considered as information requested by the Defendant and granted by the court.

## II. OTHER DEFENSES, OBJECTIONS AND REQUESTS

Pursuant to FED. R. CRIM. P. 12(c), the court requires that any defense, objection or request capable of determination without trial of the general issue[2] be raised by written

[2] These matters include all matters listed in RULES 12 (b), 12.1, 12.2, 12.3, 14, 15 and 16, FED. R. CRIM. P., and include, without limitation, (1) defects in institution of prosecution; (2) defects in indictment or information; (3)

motion in the form required by FED. R. CRIM. P. 47. Any such motion shall be filed within 30 days from date of this order, and the Government shall respond within 10 days after being served, unless the court by separate order (e.g., an "Order Setting Final Pre-Trial and Trial" or similar order) establishes an explicit deadline for filing and responding to a particular type of motion. When specific deadlines established by separate court order conflict with general deadlines stated above, the separate order shall prevail and govern the parties.

## III. COMPLIANCE

Failure to provide discovery and observe deadlines established in this order may result in imposition of sanctions. Failure to raise defenses or objections, or to make requests in accordance with Sections I and II shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.

**SIGNED this the 6th day of January, 2026.**

Christine L Stetson
UNITED STATES MAGISTRATE JUDGE

A58 Exhibit

suppression of evidence; (4) alibi; (5) insanity or mental condition; (6) defense based on public authority; (7) discovery; (8) depositions; (9) selective or vindictive prosecution; (10) outrageous Governmental misconduct; (11) misjoinder; (12) pre-indictment delay; (13) speedy trial; (14) prejudicial publicity; (15) lack of personal jurisdiction; (16) Posse Comitatus Act, 18 U.S.C. 1385; (17) recantation as a defense to perjury; (18) limitations; (19) double jeopardy; (20) multiple sentencing; and (21) immunity. If Federal Rules of Criminal Procedure, a federal statute, or other order of the court establishes an earlier deadline than established in this order, the earlier deadline shall govern the parties.

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

AS9 Exhibit

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| **v.** | § | **CASE NUMBER 1:25-CR-00038-5-MAC** |
| | § | |
| | § | |
| **TROI GRAHAM** | § | |

**ORDER**

On November 20, 2025, the court appointed Thomas J. Burbank to represent the Defendant, Troi Graham, in this matter. Now, the Defendant has filed a *pro se* motion requesting discovery, a bill of particulars, and to preserve rights regarding venue and jurisdiction. (Doc. #86.) Because the Defendant is already represented by counsel in this case, the court will strike the Defendant's *pro se* motion (doc. #86) as hybrid.

The law is clear that a defendant has the right to represent herself in a criminal proceeding. *Faretta v. California*, 422 U.S. 806 (1975); 28 U.S.C. § 1654. It is likewise settled law that a defendant has the right to assistance of counsel. *Powell v. Alabama*, 287 U.S. 45 (1932). However, a criminal defendant does not have the right to "hybrid representation"—representation partly by counsel and partly by herself. *United States v. Daniels*, 572 F.2d 535, 540 (5th Cir. 1978); *see also United States v. Jimenez*, 744 F. App'x 866, 867 (5th Cir. 2018) ("Although she filed a *pro se* motion for a new trial within 14 days of the verdict, that motion was properly ignored because she was represented by counsel when it was filed."). So long as the Defendant is represented by counsel, the Defendant must appear through counsel and should cease filing papers directly with the clerk.

Consequently, the clerk of court is directed to STRIKE the Defendant's *pro se* motion (doc. #86).

**SIGNED this the 6th day of January, 2026.**

Christine L Stetson
UNITED STATES MAGISTRATE JUDGE

A62 Exhibit

A63 Exhibit

**UNITED STATES DISTRICT COURT** **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CRIMINAL ACTION NO. 1:25CR38-5 |
| | § | |
| TROI GRAHAM | § | |

# PRETRIAL ORDER

This case is set for Final Pretrial Conference on **March 16, 2026** at 9:00 a.m. in Courtroom #3, United States Courthouse, Beaumont, Texas. Jury Selection and Jury Trial will begin immediately and continue every day thereafter until completion.

The following deadlines shall apply in this case. Failure to comply with the court's deadlines may result in the imposition of sanctions.

| | |
|---|---|
| February 9, 2026 | Motion(s) to suppress evidence shall be filed with the court. |
| February 23, 2026 | Motion(s) for continuance shall be filed with the court. |
| February 23, 2026 | Defense Counsel shall electronically file a notification of plea agreement or intent to proceed to trial. A copy of the plea agreement and/or factual basis shall be emailed to the court administrator. No plea agreement will be honored by the court, and Defendant(s) may not receive a points reduction for acceptance of responsibility after this deadline. |
| March 6, 2026 | The Government shall deliver proposed jury instructions to Defense Counsel. |
| March 9, 2026<br>By 12:00 p.m. | Defense Counsel shall deliver to the Government any additional jury instructions proposed. The submission must be made jointly if two or more Defendants are represented by separate counsel. |
| March 9, 2026<br>By 12:00 p.m. | Defense Counsel and the Government shall confer on agreed jury instructions. |
| March 9, 2026<br>By 12:00 p.m. | Defense Counsel and the Government shall: |

A. File any motions in limine and any other pretrial motions. Written responses should be filed as soon as possible, or as otherwise directed by the court;

B. File agreed jury instructions;

C. File any proposed instructions that could not be agreed upon, citing authority for each instruction. Any party seeking to file proposed jury instructions after the deadline must obtain leave of court;

D. File any objections to the proposed jury instructions. Objections must be written, specific, cite authority, and include any alternative instructions;

E. File proposed voir dire questions;

F. Provide the court a list of witnesses. The witness list shall include the city, state of residency, title, and organization association (if applicable) of each witness; and

G. Each party shall provide the court with three (3) sets of its exhibit list and color copies of each exhibit. Each set should be contained in a three-ring binder, with numbered tabs corresponding to the exhibit numbers. Exhibits shall be premarked with the exhibit number. All audio and video exhibits shall be clearly labeled and provided in digital format on one disc or USB. Photographs of physical exhibits must also be provided.

**SIGNED this the 6th day of January, 2026.**

Christine L Stetson
UNITED STATES MAGISTRATE JUDGE

A64 exhibit

Exhibit 65

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVSION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| VS. | § | 1:25-CR-38 |
| TROI GRAHAM | § | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION FOR ENTRY OF PROTECTIVE ORDER REGARDING DISCOVERY**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

The Defendant TROI GRAHAM, by and through undersigned counsel respectfully requests that the Court modifies the Government's protective order regarding discovery to be provided in this case.

Defendant submits the following:

1. Defendant objects to paragraph 11, page 3 of Governments proposed protective order:

   11. Ordering that Defense Counsel may review the PII with T. Graham, however, Defense counsel may not make a copy of the PII nor provide the PII to the Defendant.

Defendant Submits the following to the Court for consideration:

1. Defendant is a resident of the State of Michigan;
2. This Attorney is Court Appointed to represent her in this matter;
3. Defendant based on the distance should be able to review her discovery in hard copy form, in hand so she can review it at her convenience.
4. This would allow Defendant and Attorney effective communication between both

parties to prepare for the defense.

Defendant has no objection to the Government's request not to disclose other's personal information which this writer would redact any such information before releasing discovery to the Defendant.

Therefore, Defendant requests the Court to consider her requests and allow her attorney be able to provide a redacted hard copy of her discovery.

Respectfully submitted,

By/s/Thomas J. Burbank

Thomas J. Burbank
6845 Phelan Blvd.
Beaumont, TX 77706
(409)895-0200
FAX (409)895-0080
State Bar No. 03355340
burbank_hamm@yahoo.com

CERTIFICATE OF CONFERENCE

I do hearby certify that I have conferred with the United States Attorney regarding the merits of Defendant's response to Government's Motion, on this 27th day of January 2026.

/s/Thomas J. Burbank
Thomas J. Burbank

E- FILE CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this instrument is being served upon all counsel of record herein, by:

E-FILING AND E-SERVICE

On this the 27th day of January 2026.

/s/Thomas J. Burbank
Thomas J. Burbank

Ex. 67

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. TROI GRAHAM (5), Defendant. | No.1:25-CR-00038-MAC |

**ORDER DENYING *PRO SE* MOTION**

Pending is the Defendant, Troi Graham's, *Pro Se Motion to Substitute Counsel and to Extend Time to File Pretrial Motions* (Dkt. #98). The Defendant requests new counsel because discovery has not been provided and she has been unable to review the evidence. The undersigned recently entered a new Protective Order (Dkt. #102) that governs the exchange of discovery and ensures the protection of all Personally Identifiable Information (PII). Accordingly, the Defendant's *Pro Se Motion to Substitute Counsel and Extend Time to File Pretrial Motions* (Dkt. #98) is DENIED as PREMATURE, subject to reassertion.

SIGNED this 29th day of January, 2026.

Zack Hawthorn
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br>vs.<br><br>TROI GRAHAM (5)<br><br>Defendant. | No.1:25-CR-00038-MAC |

**ORDER**

Pending are Defendant, Troi Graham's, *Renewed Motions to Substitute Attorney, Extend Pretrial Motion Deadlines, and Request For Decision Without Oral Argument and Reservation of Rights* filed *pro se*.[1] (Dkt. #196, 198.) The undersigned denies the motions for the following reasons.

I. Motion to Substitute Counsel

Defendant states that she has attempted to communicate with counsel regarding discovery, potential pretrial motions, and the upcoming suppression-motion deadline, and that she has not received an adequate response. She does not identify a conflict of interest, a complete breakdown in communication, or any specific facts showing that counsel has abandoned the defense or is unable to provide constitutionally adequate representation.

"Although an indigent criminal defendant has a right to be represented by counsel, she does not have a right to be represented by a particular lawyer, or to demand a different appointed lawyer except for good cause." *United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973). Good cause includes "a complete breakdown in communication or an irreconcilable conflict which leads to an

[1] The motions are duplicative and filed three days apart. Graham previously filed a *Pro Se Motion to Substitute Counsel* (Dkt. #98), which the court denied as premature, subject to reassertion (Dkt. #103).

Exhibit 6a

apparently unjust verdict." *Id.*; *United States v. Hernandez*, 502 F. App'x 363, 367 (5th Cir. 2012). Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers. *Wheat v. United States*, 486 U.S. 153, 158-59 (1988).

Defendant has not advanced any evidence of "good cause" to grant the request. At most, she expresses dissatisfaction with counsel's communication, which is—standing alone—insufficient to warrant substitution of counsel. Moreover, substitution at this stage would risk delay and disruption of existing pretrial deadlines without sufficient showing that new counsel is necessary to protect Defendant's right to effective assistance of counsel. Accordingly, the undersigned denies her request.

## II. Motion for Continuance

Defendant also requests an extension of pretrial deadlines. That request, however, was filed *pro se* while she is represented by counsel. Defendant's appointed attorney, Mr. Tom Burbank, filed a *Motion for Continuance* (Dkt. #199) the same day. The law is clear that a defendant has the right to represent herself in a criminal trial. *Faretta v. California*, 422 U.S. 806 (1975); 28 U.S.C. § 1654. It is likewise settled law that a defendant has the right to assistance of counsel. *Powell v. Alabama*, 287 U.S. 45 (1932). However, a criminal defendant does not have the right to "hybrid representation"—representation partly by counsel and partly by herself. *United States v. Williams*, 667 F. App'x 489 (5th Cir. 2016); *United States v. Daniels,* 572 F.2d 535, 540 (5th Cir. 1978). So long as she is represented by counsel, the Defendant must appear through counsel and should cease filing papers directly with the clerk.

Accordingly, the undersigned denies Defendant's *pro se* requests (Dkt. #196 and 198). The *Motion for Continuance* (Dkt. #199), filed by counsel, remains pending and will be addressed by the District Court.

SIGNED this 10th day of June, 2026.

Zack Hawthorn
United States Magistrate Judge

Exhibit 70

**UNITED STATES DISTRICT COURT** **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:25-CR-38 |
| | § | |
| BROOKE CRAWFORD (2) | § | |
| RIAN GRAHAM (4) | § | |
| TROI GRAHAM (5) | § | |
| KELLEE SIMS (6) | § | |
| RAYSEAN GRAHAM (7) | § | |
| SYLVIA SHANN (8) | § | |

Exhibit 71

## ORDER

Defendants Brooke Crawford, Rian Graham, Troi Graham, Kellee Sims, Raysean Graham, and Sylvia Shann[1] are set for trial on November 12, 2026. Under the Amended Pretrial Order (#254), pretrial materials, including but not limited to motions in limine, agreed proposed jury instructions, non-agreed proposed jury instructions, objections to the proposed jury instructions, proposed voir dire questions, witness lists, exhibits lists, and copies of the exhibits, are due on October 20, 2026, by noon.[2] At this time, the pretrial material deadline is STAYED until a date to be set by subsequent court order. All other deadlines under the Amended Pretrial Order (#254) remain unchanged by this order.

SIGNED at Beaumont, Texas, this 16th day of October, 2026.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

---

[1] Defendant Mark Day (#3) entered a plea of guilty on October 9, 2026.

[2] The Amended Pretrial Order (#254) provides additional details concerning pretrial materials.

Exhibit 12

**UNITED STATES DISTRICT COURT** **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CRIMINAL ACTION NO. 1:25CR38 |
| | § | |
| BROOKE CRAWFORD (2) | § | |
| MARK DAY (3) | § | |
| RIAN GRAHAM (4) | § | |
| TROI GRAHAM (5) | § | |
| KELLEE SIMS (6) | § | |
| RAYSEAN GRAHAM (7) | § | |
| SYLVIA SHANN (8) | § | |

# ORDER

Joint Opposed Motion for Continuance as to defendants Brook Crawford, Rian Graham, Troi Graham, Kellee Sims, Raysean Graham, and Sylvia Shann (#318) is GRANTED IN PART. Defendant Rian Graham's Motion for Continuance (#328) is GRANTED IN PART. The court, having considered the factors set forth in 18 U.S.C. § 3161, finds as follows:

1. Defendants' requests are made knowingly, intelligently, and voluntarily.

2. Having considered the factors listed in 18 U.S.C. § 3161(h)(7)(B), the court finds that the ends of justice served by granting the defendants' request outweigh the best interests of the public and the Defendant in a speedy trial.

3. This continuance is required to assure the necessary time for counsel to prepare effectively for trial, taking into account the exercise of due diligence.

4. The period of delay due to the motion for continuance is the period from the date of the motion through the date of the new trial setting, and this is excludable time under the Speedy Trial Act.

This case is reset for Final Pretrial Conference and Jury Trial on November 30, 2026, at 9:00 a.m. A revised scheduling order is forthcoming.

Ex. 73

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

TROI GRAHAM (5),

Defendant.

No. 1:25-CR-38

**ORDER**

Pending is Defendant, Troi Graham's, *Pro Se Emergency Motion to Substitute Attorney* (Dkt. #316). Graham seeks relief for what she describes an irreconcilable breakdown in communication with her lawyer and dissatisfaction with counsel's failure to file "critical protective pretrial motions on Defendant's behalf despite express written demands." This is Graham's third request to substitute counsel (*see* Dkts. #196 and #198), and like her prior requests, this motion is also denied.

"The Sixth Amendment guarantees indigent defendants the right to appointed counsel, but it does not promise them the counsel of their choice." *United States v. Quinn*, 826 F. App'x 337, 341 (5th Cir. 2020) (citing *United States v. Mitchell*, 709 F.3d 436, 441 (5th Cir. 2013)), *cert. denied*, 141 S. Ct. 1434 (2021). And, while a defendant may not be entitled to choose appointed counsel, the Fifth Circuit has explained:

> A defendant is entitled to counsel capable of rendering competent, meaningful assistance in the preparation and trial of the pending charges, including appropriate evaluation and advice with reference to a plea of guilty. A defendant is not entitled to an attorney who agrees with the defendant's personal view of the prevailing law or the equities of the prosecutor's case. A defendant is entitled to an attorney who will consider the defendant's views and seek to accommodate all reasonable requests with respect to trial preparation and trial tactics. A defendant is entitled to appointment of an attorney with whom he can communicate reasonably, but has no right to an attorney who will docilely do as he is told.

> Every defendant is entitled to the assistance of counsel dedicated to the proposition, and capable of assuring that, the prosecution's case shall be presented in conformity with the Constitution, rules of evidence and all other controlling rules and practices. No defendant has a right to more.

*United States v. Moore*, 706 F.2d 538, 540 (5th Cir. 1983). Graham is advised that she is not entitled to substitute counsel merely because counsel declines to file futile motions or "do as he is told." *Id.*; *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). Rather, a defendant seeking substitution of appointed counsel must demonstrate "good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust verdict." *Quinn*, 826 F. App'x at 341–42 (quoting *United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973)).

Graham has not demonstrated good cause warranting substitution of counsel. Moreover, given the complexity of this case and the approaching trial setting, substituting counsel at this stage would risk unnecessary delay and disruption of the proceedings. Current counsel is familiar with the voluminous discovery, the procedural history, and the issues relevant to Graham's defense. Under these circumstances, substitution of counsel is not warranted. Accordingly, Graham's motion to substitute counsel is DENIED.

SIGNED this 15th day of October, 2026.

Zack Hawthorn
United States Magistrate Judge

Exhibit 75

**Full docket text for document 322:**
ORDER denying [316] Pro Se Emergency Motion to Substitute Attorney as to Troi Graham (5). Signed by Magistrate Judge Zack Hawthorn on 10/15/2026. (Mailed to T. Graham on 10/15/2026.) (SCM)

---

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 10/28/2026 09:28:00 | | | |
| **PACER Login:** | Troi0218 | **Client Code:** | 8458614 |
| **Description:** | History/Documents | **Search Criteria:** | 1:25-cr-00038-MAC-ZJH |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

**UNITED STATES OF AMERICA v. TROI GRAHAM (5)**
CASE NO. 1:25-CR-00038-MAC-ZJH | HON. MARCIA A. CRONE

# EXHIBIT I

## MICHIGAN LARA CORPORATE REGISTRATIONS

Official State of Michigan Corporations Division Filings for *My Big Sister's House* (ID: 71496H) and *Lionsgate Business Consulting* (ID: 802136307).

**Summary for the Court:** Proves corporate entities operated strictly within Michigan under state registration, establishing zero territorial nexus to the Eastern District of Texas under *United States v. Cabrales*, 524 U.S. 1 (1998).

CSCL/CD-502 (Rev. 01/14)

Exhibit I1

**MICHIGAN DEPARTMENT OF LICENSING AND REGULATORY AFFAIRS**
**CORPORATIONS, SECURITIES & COMMERCIAL LICENSING BUREAU**

Date Received

dk1186 $20

This document is effective on the date filed, unless a subsequent effective date within 90 days after received date is stated in the document.

FILED
MAY 07 2014
ADMINISTRATOR
CORPORATIONS DIVISION

Name

Address

City State ZIP Code

EFFECTIVE DATE:

**Document will be returned to the name and address you enter above. If left blank, document will be returned to the registered office.**

71496H

## ARTICLES OF INCORPORATION
### For use by Domestic Nonprofit Corporations
(Please read information and instructions on the last page)

*Pursuant to the provisions of Act 162, Public Acts of 1982, the undersigned corporation executes the following Articles:*

## ARTICLE I

The name of the corporation is:

My Big Sister's House

## ARTICLE II

The purpose or purposes for which the corporation is organized are:

My Big Sister's House core activities are providing emergency care to battered women and children. The corporation is organized exclusively for charitable, religious and educational purposes, including, for such purposes, the making of distributions to organizations that qualify as exempt organizations under section 501(C)(3) of the Internal Revenue Code, or the corresponding section of any future federal tax code.

## ARTICLE III

1. The corporation is organized upon a nonstock basis. (Stock or Nonstock)

2. If organized on a stock basis, the total number of shares which the corporation has authority to issue is ______________. If the shares are, or are to be, divided into classes, the designation of each class, the number of shares in each class, and the relative rights, preferences and limitations of the shares of each class are as follows:

# *MICHIGAN DEPARTMENT OF LICENSING AND REGULATORY AFFAIRS*

## *FILING ENDORSEMENT*

Exhibit I2

***This is to Certify that the*** ARTICLES OF INCORPORATION

***for***

LIONSGATE BUSINESS CONSULTING COMPANY

***ID Number:*** 802136307

***received by electronic transmission on*** November 30, 2017 ***, is hereby endorsed.***

***Filed on*** December 13, 2017***, by the Administrator.***

***The document is effective on the date filed, unless a subsequent effective date within 90 days after received date is stated in the document.***

***In testimony whereof, I have hereunto set my hand and affixed the Seal of the Department,*** *in the City of Lansing, this 13th day of December, 2017.*

*Julia Dale, Director*

*Corporations, Securities & Commercial Licensing Bureau*

Exibit E3

**ARTICLE V**

The name(s) and address(es) of the incorporator(s) is (are) as follows:

| Name | Residence or Business Address |
|---|---|
| EDWARD TAYLOR | 8116 WARD DETROIT, MI 48228 USA |

Signed this 30th Day of November, 2017 by the incorporator(s).

| Signature | Title | Title if "Other" was selected |
|---|---|---|
| Edward taylor | Incorporator | |

By selecting ACCEPT, I hereby acknowledge that this electronic document is being signed in accordance with the Act. I further certify that to the best of my knowledge the information provided is true, accurate, and in compliance with the Act.

j Decline j Accept

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

**UNITED STATES OF AMERICA v. TROI GRAHAM (5)**
CASE NO. 1:25-CR-00038-MAC-ZJH | HON. MARCIA A. CRONE

# EXHIBIT J

## CERTIFIED MEDICAL & DIAGNOSTIC RECORDS OF MINOR CHILD (H.R.)

Certified hospital and clinical records from U-M Health, McCrory Center, and MetroEHS detailing diagnoses of WDR45-related BPAN disorder, Temporal Lobe Epilepsy (Right Hippocampal Sclerosis), Level 3 Autism Spectrum Disorder, and 35 hrs/week ABA therapy.

**Summary for the Court:** Proves irreplaceable primary caregiver status and extreme hardship under Fed. R. Crim. P. 21(b) and U.S.S.G. § 5H1.6.

Name: Hannah M Robinson | Legal Name: Hannah M Robinson | DOB: 7/9/2023 | MRN: 102319015 | PCP: Benjamin Maddock, MD

Exhibit 51

# MR Brain Temporal Lobe Epilepsy (Hannah)

## Results

Impression
IMPRESSION:
1. The brain parenchyma is notable for asymmetric right hippocampal volume loss consistent with right hippocampal sclerosis. There is also diffuse thinning of the corpus callosum in the setting of mild generalized supratentorial volume loss.
2. NeuroQuant analysis failed despite repeated attempts.

Electronically signed by Aristides A Capizzano, MD on 4/10/2026 3:32 PM.

Narrative
MR BRAIN WO AND W CONTRAST, 4/10/2026 12:24 PM

INDICATION: seizures

COMPARISON: None.

TECHNIQUE:
1. MRI is performed on a 3Tesla magnet using the University of Michigan epilepsy/TLE brain protocol. Images obtained prior to and following the uneventful administration of 2 mL PROHANCE intravenous contrast.

3D PROCESSING: None

FINDINGS:

MRI Brain:

Asymmetric right hippocampal atrophy. Diffuse thinning of the corpus callosum. Additionally, there is mild generalized supratentorial volume

Exhibit 52

loss. Brain volume and signal characteristics are otherwise normal. The cerebellum, brainstem and visualized spinal cord are normal without evidence for focal signal abnormality.

No abnormally enhancing lesions are visualized. No abnormal restricted diffusion or evidence of acute infarction. No acute intracranial hemorrhage. The ventricular system is normal without shift of midline structures. No extra-axial fluid collections. The dural venous sinuses show a normal flow-void and appear unremarkable to the limits of this evaluation.

Moderate mucosal thickening within the maxillary sinuses. The visualized orbits and mastoid air cells are unremarkable for technique.

NeuroQuant analysis failed despite repeated attempts.

## Result Information

| Exam Date | Exam Time | Reading Provider | Pager # | Signing Radiologist | Pager # | Read Date |
|---|---|---|---|---|---|---|
| Apr 10, 2026 | 13:20 | Capizzano, Aristides Andres, MD | 23006 | Capizzano, Aristides Andres, MD | 23006 | Apr 10, 2026 3:32 PM |
| | | Munteanu, Alexander, DO | | | | Apr 10, 2026 3:32 PM |

## Radiology Images

Show images for MR Brain Temporal Lobe Epilepsy

MyChart® licensed from Epic Systems Corporation© 1999 - 2026

METROEHS PEDIATRIC THERAPY
PEDIATRIC THERAPY THAT REVEALS THE SUPER IN EVERY CHILD!

Exhibit 53

# Initial ABA Assessment and Treatment Plan

**Client Name:** Hannah Robinson
**Date of Birth:** 7/9/2023
**Age:** 3 years 1 month

**Date of Evaluation:** 8/19/2026
**Date of Report:** 8/25/2026
**Prep and Review:** 8/19/2026 7:45AM-8AM
**Assessment Write-Up:** 8/20/26 12PM-3PM, 8/21/26 9AM-12PM, 8/24/26 10:30AM-12:30PM
**Evaluator:** Madison Lee, MS, LLP, BCBA, LBA
**Date of next 6-month re-authorization:** 2/19/2027

**Privacy Statement:**
The following report may contain confidential and sensitive information. This report is intended for Hannah Robinson and/or her parent/legal guardian and/or multidisciplinary team to determine therapy/treatment goals, program placement, or medical necessity. Disclosure requires written consent from Hannah and/or her parent/legal guardian.

**Background Information:**
Hannah is a playful and energetic 3-year-old girl who lives with her mom and brother full time and spends time with her father throughout the week. During today's parent interview the assessor discussed Hannah's personal and medical history with her mother, Troi. Hannah received her autism spectrum disorder (F84.0) diagnosis when she was 2 years and 10 months old sold through McCrory center in Detroit, MI. Speech, cognitive, and balance delays were what prompted Hannah's parents to get an ASD evaluation. Mom reported that Hannah did not meet her motor milestones on time. Hannah has no history or exposure to previous treatments including ABA, speech, OT, or PT. Hannah's mother is interested in enrolling Hannah in all disciplines provided by MetroEHS in South Lyon. Hannah has no prior exposure to toilet training and currently wears a diaper. Mom reported difficulty with daily living skills, including diaper changes, dressing, and brushing teeth and hair.

**Medical History**
Hannah was diagnosed with other co-occurring disorders including Epilepsy (G40.909) and WD45BPANS (genetic neurological disorder) that includes symptoms of delayed motor skills, intellectual disabilities, seizures, and sleep issues. Hannah's mom reported that her last reported seizure was in April of 2026. Hannah currently takes 400mg of Keppra twice daily, 10mg of a B6 vitamin once daily, and nasal diastat as needed when seizures occur. A seizure plan will be obtained from the family's medical provider and staff will be trained on the seizure action plan prior to her first day of services. Hannah is allergic to latex gloves and does not have a history of ear infections.

**School**
Hannah does not currently attend a school-based program. She previously attended early-on through Livingston County in Howell, MI, but was recommended early intensive therapy first. Hannah currently has an IEP, and parents will provide a copy to the BCBA. No current plans for Hannah to attend to a school setting have been made yet.

**Number of hours per week receiving other support services:**

- **Occupational Therapy:** None
- **Physical Therapy:** None


MetroEHS Pediatric Therapy | 44670 Ann Arbor Road W Suite 130, Plymouth, MI 48170
313-278-4601 313-347-1652 info@metroehs.com www.metroehs.com

Exhibit 34

- **Speech Therapy:** None

**Parent Interview:**
The assessor completed the interview with Hannah's mother, Troi. Hannah's mother identified her primary concerns as improving her communication skills, increasing her expressive language, reducing mouthing and self-injury behaviors, eating with utensils and coordination with walking. Mom stated Hannah will bite her hand when frustrated and frequently sucks on her fingers, often resulting in sores and wounds on her hand. Mom showed the BCBA a recent injury on Hannah's left hand between her thumb and index finger, stating it was caused by her sucking on her hand. The wound was observed to be approximately ¼ to ½ inch in size and red in color. She reported that Hannah currently communicates by pulling hair, hitting or whining when she needs something. If Hannah wants to be held, she will walk up to an adult and hold out her arms. When discussing Hannah's strengths, her mother reported that she is very food motivated and a very happy child. Regarding skill deficits, Hannah shows a hard time cleaning up, likes to throw items, and is unable to use a fork or a spoon to eat. Hannah will not complete transitions between locations and requires full physical prompting. She gets tired very quickly from walking longer distances but has shown some toleration in holding mom's hand recently. Hannah will sit on the toilet and void in the morning, but she still wears a diaper and voids in the diaper throughout the day. In regard to daily living skills, Hannah engages in maladaptive behaviors including kicking when her diaper is being changed. She does not assist with dressing and tries to escape from brushing teeth and hair, however, she cooperates with bathing. Mom reported that she sleeps in her own room throughout the night and will nap for an hour each day around 10a. She reported that Hannah engages in teeth grinding at night. No food allergies or dietary restrictions were reported. Mom informed the assessor that Hannah is not a picky eater and will try most foods that are presented to her.

**Direct Observation**:
Hannah entered the clinic for her assessment and smiled when greeted by the assessor. She was carried into the assessment room by her mother. Throughout today's assessment, Hannah explored a variety of preferred and non-preferred toys, including magnetic animals, the koala linkimal, jungle toys, an activity cube, puzzles, trains, a ring stacker and a burger stacker. When the assessor attempted to have Hannah imitate pressing the buttons on the jungle toy, she walked away and demonstrated 0% accuracy. When presented with an activity cube to present imitation of rolling the beads, Hannah demonstrated 0% as she walked away from the cube. When presented with an inset puzzle, Hannah did not respond to the instruction to sit down and was observed to pick up and mouth puzzle pieces. Hannah also demonstrated limited interest in cause-and-and-effect toys during today's assessment. When observing Hannah during play, she demonstrated a strong interest in dropping and throwing objects. She frequently threw items to watch them drop during play. Hannah was observed to frequently mouth toys including puzzle pieces, parts of magnetic animals, trains, parts of ring stacker and burger stacker and frequently put her fingers in her mouth to suck on them. When redirected, Hannah tolerated redirection without maladaptive behaviors but would immediately put the item back in her mouth. Hannah spontaneously reengaged in eye contact as a mand for more tickles and for the assessor to chase her during activities. She spontaneously approached the assessor 2 times and mom 2 times to be picked up and held. Hannah independently reached for the item she wanted when the assessor held up two choices at eye level, no pointing was observed. Hannah was also observed to visually track items in a circle, left to right, center to right, and center to left in 100% of opportunities. Hannah made various vocalizations during the assessment including 'ohh', duh', deh', and 'ahh'.

**Assessment:**

Exhibit 35

**VB-MAPP Assessment:**

VB-MAPP Milestones Assessment: The VB-MAPP Milestone Assessment is a sequenced set of developmental milestones accumulated from over 50 developmental charts across a variety of sources. This program was then classified in terms of B. F. Skinner's *Analysis of Verbal Behavior* and several other sources (including field trials) that utilize the principles of Applied Behavior Analysis. It contains 16 separate measurements of language and language-related skills and is considered "industry standard" in treating autism spectrum disorders and other developmental delays. More specifically, the VB-MAPP assessment involves 3 levels that are then broken down into more specialized areas. Each level contains skills that are typically exhibited by children of a specific age range. Level 1 focuses on skills of children between 0 and 18 months of age. Level 2 on children 18 to 30 months of age and level 3 on children 30 to 48 months of age. Standardization across specialized areas is a key feature so that, for instance, mastering level 5 in one specialized area is equal to mastering level 5 in another specialized area. For this assessment, (Client) was exposed to a variety of specialized areas, mastery criterion to see if he could exhibit a specific skill. The evaluator noted each instance of a skill, which is presented in the graph to follow.

**VB-MAPP Barriers Assessment**: Provides an assessment of 24 common learning and language acquisition barriers faced by children with autism or other developmental disabilities. The barriers include behavior problems, instructional control, defective mands, defective tacts, defective echoic, defective imitation, defective visual perception and matching-to-sample, defective listener skills, defective intraverbal, defective social skills, prompt dependency, scrolling, defective scanning, defective conditional discriminations, failure to generalize, weak motivators, response requirement weakens the motivators, reinforcer dependency, self-stimulation, defective articulation, obsessive-compulsive behavior, hyperactive behavior, failure to make eye contact, and sensory defensiveness. By identifying these barriers, the clinician can develop specific intervention strategies to help overcome these problems, which can lead to more effective learning.

**Results:**

**VB-MAPP Results**

Assessment graph indicates a total score of 10.5 out of 170.

Mand (0.0 out of 15): Hannah was not observed to emit 2 words, signs, or icon selection with or without prompting. She showed no spontaneous manding and showed no skill in pointing to mand for a preferred item.

Tact (0.0 out of 15): No skill was observed in this domain.

Listener Responding (2.0 out of 15): Hannah was observed to attend to the speaker's voice by making eye contact with the speaker at least 5 times and she responded to her own name for at least 5 opportunities.

VPMTS (1.0 out of 15): Hannah independently tracked stimuli in a circle, left to right, center to right, and center to left in 100% of opportunities

Play (4.0 out of 15): Hannah independently explored and manipulated objects for 1 minutes, showed a variation in play as she engaged in at least 5 different items, and independently engaged in cause-and-effect play for at least 2 minutes.

Exhibit 56

Social (2.0 out of 15): Hannah made eye contact as a type of mand in 5 opportunities and indicated that she wanted to be held or to be played with from the assessor and her mother.

Imitation (0.0 out of 10): No skill was observed in this domain.

Echoic (0.0 out of 10): No skill was observed in this domain.

Vocal (1.5 out of 5): Hannah was observed to emit various sounds throughout the assessment including 'ohh', duh', deh', and 'ahh'. She was not observed to vocalize whole words or phrases.

LRFFC (0.0 out of 10): No skill was observed in this domain.

Intraverbal (0.0 out of 10): No skill was observed in this domain.

Group (0.0 out of 10): No skill was observed in this domain.

Linguistics (0.0 out of 10): No skill was observed in this domain.

Reading (0.0 out of 5): No skill was observed in this domain.

Writing (0.0 out of 5): No skill was observed in this domain.

Math (0.0 out of 5): No skill was observed in this domain.



MetroEHS Pediatric Therapy | 44670 Ann Arbor Road W Suite 130, Plymouth, MI 48170
313-278-4601 313-347-1652 info@metroehs.com www.metroehs.com

METROEHS
PEDIATRIC THERAPY
PEDIATRIC THERAPY THAT REVEALS THE *SUPER* IN EVERY CHILD!

Exhibit J7

# VB-MAPP
## Master Scoring Form

| | |
|---|---|
| Child's name: | Hannah Robinson |
| Date of birth: | 7/9/2023 |
| Age at testing: | 1 3 yr 1 mo 2 3 4 |

| Key: | Score | Date | Color | Tester |
|---|---|---|---|---|
| 1st test: | 10.5 | 8/19/26 | | M. Lee |
| 2nd test: | | | | |
| 3rd test: | | | | |
| 4th test: | | | | |






MetroEHS Pediatric Therapy | 44670 Ann Arbor Road W Suite 130, Plymouth, MI 48170
313-278-4601 313-347-1652 info@metroehs.com www.metroehs.com

Exhibit 38

**Barriers Assessment Results**

*Scoring key: 0 = no problem, 1 = occasional problem, 2 = moderate problem, 3 = persistent problem, 4 = severe problem*

Assessment graph indicates a total score of 87 out of 96.

Negative behaviors: Hannah scored 3 out of 4 possible points indicating that she emits more sever negative behaviors daily.

Instructional control (escape and avoidance of instructional demands): Hannah scored 3 out of 4 possible points, indicating that she emits noncompliant behavior several times a day including biting, scratching, hitting and self-injury behaviors. During the assessment, Hannah was observed to repeatedly resist physical assistance from the assessor but did not engage in any aggression toward the assessor during these tasks.

Absent, weak, or defective mand repertoire: Hannah scored a 3 out of 4 possible points, indicating that she has limited manding skills and requires prompting. Negative behaviors function as mands or excessive and inappropriate mands occur. Per parent report, Hannah will hit or pull mom's hair when she needs something. During the assessment, Hannah was observed to utilize eye contact to mand for the continuation of social games with the assessor and reached toward items she wanted while looking at them.

Absent, weak, or defective tact repertoire: Hannah scored a 4 out of 4 possible points, indicating that she has no effective tacting skills at this time.

Absent, weak, or impaired echoic repertoire: Hannah scored a 4 out of 4 possible points, indicating that she has no effective tacting skills at this time.

Absent, weak, or impaired motor imitation: Hannah scored a 4 out of 4 possible points, indicating imitation skills are prompt bound physically or verbally. Hannah demonstrated 0% accuracy with imitating the assessor during a play activity with

Absent, weak, or impaired visual perceptual skills and matching-to-sample: Zayden scored a 4 out of 4 possible points, indicating that she has limited or no matching skills. Hannah demonstrated 0% accuracy with completing inset puzzles and was observed to mouth the pieces.

Absent, weak, or impaired listener repertoire: Hannah scored a 4 out of 4 possible points indicating that she has no listener skills at this time.

Absent, weak, or impaired intraverbal repertoire: Hannah scored a 4 out of 4 possible points indicating she has no intraverbal skills at this time.

Absent, weak, or impaired social skills: Hannah scored a 3 out of 4 possible points indicating that she does not take turns or share, does not respond to mands from peers, but engages in some social play. Language skills are limited. Hannah engaged in a game of chase with the assessor and independently made eye contact to continue the activity. Hannah also spontaneously approached the assessor and indicated she wanted to be picked up by reaching her arms up on two occasions.

Prompt dependent: Hannah scored a 4 out of 4 possible points indicating that she relies on prompting and most skills are prompt bound.

Scrolling responses: Hannah scored a 4 out of 4 possible points indicating scrolling occurs almost every trial.

Impaired scanning skills: Hannah scored a 4 out of 4 possible points indicating that she does not scan arrays or respond before scanning. Hannah was not observed to scan the inset puzzle to put pieces in when doing an animal puzzle.

Failure to make conditional discriminations: Hannah scored a 4 out of 4 possible points indicating she does not make conditional discriminations but can do simple discriminations.

Failure to generalize: Hannah scored a 4 out of 4 possible points, indicating that she does not generalize other than very simple responding.

Weak or atypical motivating operations: Hannah scored a 4 out of 4 possible points indicating that she has very limited Mos or very few that are age appropriate.

Reinforcer dependent: Hannah scored a 4 out of 4 possible points indicating that she requires a constant and immediate reinforcer to complete a task.

Self-stimulation: Hannah scored a 4 out of 4 possible points indicating that she engages in self-stimulatory behavior that is persistent and interferes with learning.

Defective articulation: Hannah scored a 4 out of 4 possible points indicating that her speech is unintelligible to familiar listeners and hinders his ability to communicate.

Obsessive-compulsive behavior: Hannah scored a 4 out of 4 points indicating that she exhibits rigidities that significantly disrupt instructional routines. Hannah was observed to repeatedly pick up and drop or throw items and the assessor was unable to redirect this behavior during the skills assessment.

Hyperactive behaviors: Hannah scored a 4 out of 4 possible points indicating that she exhibits high levels and restlessness, hindering her learning abilities. Hannah followed the instruction to sit on the floor on one occasion and was observed to frequently move around the environment throughout the assessment.

Failure to make eye contact: Hannah scored a 3 out 4 possible points indicating that she makes minimal or no contact when manding, attends more to objects than people, and it is difficult to get her to make any eye contact. Hannah spontaneously made some eye contact during the assessment, and was observed to primarily occur during the social game of chase with the assessor.

Sensory defensiveness: Hannah scored a 0 out of 4 possible points indicating that she does not exhibit problem behaviors related to sensory defensiveness.

METROEHS
PEDIATRIC THERAPY
PEDIATRIC THERAPY THAT REVEALS THE *SUPER* IN EVERY CHILD!

Exhibit J10

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Child's name: | Hannah Robinson | | | | | | | |
| Date of birth: | 7/9/2023 | | | | | | | |
| Age at testing: | 1 | 3 yr 1 mo | 2 | | 3 | | 4 | |

| Key: | Score | Date | Color | Tester |
|---|---|---|---|---|
| 1st test: | 87 | 8/19/26 | | M. Lee |
| 2nd test: | | | | |
| 3rd test: | | | | |
| 4th test: | | | | |

Behavior Problems | Instructional Control | Defective Mand | Defective Tact | Defective Echoic | Defective Imitation



Defective VP-MTS | Defective Listener | Defective Intraverbal | Defective Social Skills | Prompt Dependent | Scrolling



Defective Scanning | Defective Conditional Discrimination | Failure to Generalize | Weak Motivators | Response Requirement Weakens MO | Reinforcer Dependent



Self-Stimulation | Defective Articulation | Obsessive-Compulsive Behavior | Hyperactive Behavior | Failure to Make Eye Contact | Sensory Defensiveness





MetroEHS Pediatric Therapy | 44670 Ann Arbor Road W Suite 130, Plymouth, MI 48170
313-278-4601 313-347-1652 info@metroehs.com www.metroehs.com

Exhibit "J"

Hannah displays greatest strengths in the areas of listener responding, independent play and social. Hannah was observed to engage with various different items including jungle toy, puzzle, activity cube, magnetic animals, linkimals, ring stacker, and trains. Hannah was also observed to engage in movement and interactive play with the assessor including tickles and chase. Hannah spontaneously engaged in eye contact as a type of mand with the assessor and independently approached her mother and the assessor when she wanted to be held. Hannah responded to hearing her own name and attended to the speakers voice by independently making eye contact. Hannah oriented towards the assessor when a desired item was present and visually tracked items in a circle, from left to right, center to right and center to left. No aggression or tantrum behaviors were observed.

<u>Barriers to Skill Acquisition</u>
Hannah displays significant barriers within the VB-MAPP barriers assessment, with a total score of 87 out of 96. Hannah demonstrates severe barriers related to negative behaviors, instructional control, manding, tacting, echoic skills, motor imitation, listener responding, intraverbal, prompt dependency, and rigid behaviors. During parent report, Hannah exhibits significant behaviorial barriers that interfere with learning and participation. She engages in noncompliant response to instructional demands, including biting, scratching, hitting, and self-injurious behaviors. Persistent self-stimulatory behavior, hyperactivity/restlessness, and rigid or obsessive -compulsive behaviors further interfere with her ability to attend to instruction and pariticpate in learning activites. Hannah has limited functional communication and often requires prompting to mand for wants and needs. Her tact, echoic, and intraverbal repertoires are significantly impaired, and her articualtion is reportedly unintellilligible to familiar listeners, further limiting her ability to communicate effectively. Additionally, Hannah demonstrates minimal eye contact and limited social communication, including taking turns, sharing and responding to mands from peers.

***Plan to Mitigate the Barriers:*** In the upcoming authorization period, long and short-term goals will target barriers to skill acquisition. ABA therapy goals will be created to address the barriers that were observed. Treatment will focus on increasing Hannah's functional communiocation, social engagment, independent attending, and ability to acquire and generalize skills across people and envionrments. ABA goals will target responding to requests from peers, initiating interactions with peers, increasing appropriate eye contact during communication and manding, and reducing reliance on prompts. Treatment will also focus on increasing Hannahs ability to attend to and tolerate low-preference activties for pregressively longer durations while teaching appropriate repalcement behaviors for escape and avoidance of instructional demands. The BCBA will implement and montiro treatment across structured and antrualistic teaching opportunities, including the natrual enviornment, role-plauy activites, and DTT teaching when skills require frequent and repeated instruction. The BCBA will monitor Hannahs progress, adjust prompting and reinfrocment procedures as clincially indicated, and systematically program for generalization and maintenance of acquired skills across people, settings, and routines.

**ABA Therapy Goals and Objectives:**
This Applied Behavior Analysis (ABA) treatment plan, created by Metropolitan Speech, Sensory and ABA Centers, will focus on the below skills mastered at 80% or higher accuracy across 3 consecutive observations (unless otherwise noted), maintained across 4-week generalization checks.

**<u>Client Goals:</u>**
**Expressive Language: Manding**
1. **Baseline:** During direct observation, Hannah displayed 0% accuracy to emit any words, gestures or signs.

**Goal:** Hannah will point or gesture towards a reinforcer that is presented at eye level in order to obtain it in 80% of opportunities across 3 consecutive sessions.
**Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
**Intro Date:** August 2026
**Goal Status:** NEW

2. **Baseline:** During direct observation, Hannah displayed 0 mands to access preferred items or activities.
   **Goal:** Hannah will generalize two mands across 2 different staff members and 2 different environments across 3 consecutive sessions.
   **Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
   **Intro Date:** August 2026
   **Goal Status:** NEW

**Receptive Language: Listener Responding**

3. **Baseline:** During the assessment, Hannah responded to the direction 'sit down' in 0% of opportunities.
   **Goal:** Hannah will respond to 2 simple (1 part) instructions in contact (e.g., sit down, when by a chair) with no more than a gesture prompt in 50% of opportunities across 3 consecutive sessions.
   **Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
   **Intro Date:** August 2026
   **Goal Status:** NEW

4. **Baseline:** No skill was observed.
   **Goal:** Hannah will discriminate between 2 objects when they are presented at eye level in 50% of opportunities across 3 consecutive sessions.
   **Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
   **Intro Date:** August 2026
   **Goal Status:** NEW

5. **Baseline:** This skill was not displayed during direct observation.
   **Goal:** Hannah will touch 2 body parts on herself (e.g., touch nose, touch head) in 50% of opportunities across 3 consecutive sessions.
   **Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
   **Intro Date:** August 2026
   **Goal Status:** NEW

6. **Baseline:** No skill was observed.
   **Goal:** Hannah will perform 2 motor actions on command with a model prompt (e.g., show me clapping) in 50% of opportunities across 3 consecutive sessions.
   **Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
   **Intro Date:** August 2026

Ex. 313

**Goal Status:** NEW

**VPMTS**

7. **Baseline:** During direct observation, Hannah was not observed to use her index finger to make a pointing gesture.
   **Goal:** Hannah will use her index finger to poke things (e.g., push index finger in play-doh) or for other uses 5 times in 80% of opportunities across 3 consecutive sessions.
   **Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
   **Intro Date:** August 2026
   **Goal Status:** NEW

8. **Baseline:** No skill was observed.
   **Goal:** Hannah will grasp small objects with a thumb and index finger (pincer grasp) 5 times in 80% of opportunities across 3 consecutive sessions.
   **Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
   **Intro Date:** August 2026
   **Goal Status:** NEW

9. **Baseline:** During direct observation, Hannah was not observed to engage in a variety of items, however, stereotypic behaviors were present.
   **Goal:** Hannah will visually attend to a toy or book for 30 seconds with the absence of stereotypic behaviors (e.g., picking up and dropping the item) in 50% of opportunities across 3 consecutive sessions.
   **Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
   **Intro Date:** August 2026
   **Goal Status:** NEW

10. **Baseline:** Hannah required full physical prompting when presented with a ring stacker to stack the rings in 1 opportunity
    **Goal:** Hannah will independently place 3 items in a container, stack 3 blocks, or place 3 rings on a peg for 2 different activities in 50% of opportunities across 3 consecutive sessions.
    **Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
    **Intro Date:** August 2026
    **Goal Status:** NEW

**Independent play**

11. **Baseline:** During direct observation, Hannah was observed to engage in chase with the assessor. Movement play for 2 minutes in duration was not observed in opportunities.
    **Goal:** Hannah will independently engage in movement play (e.g., dancing, swinging) for 2 minutes in 80% of opportunities across 3 consecutive sessions.
    **Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
    **Intro Date:** August 2026

Exhibit JPA

**Goal Status:** NEW

12. **Baseline:** When presented with a puzzle, Hannah observed the puzzle pieces and displayed 0% accuracy when presented with a model prompt of putting puzzle pieces in.
    **Goal:** Hannah will insert 1 piece of an inset puzzle with no more than a gesture prompt in 80% of opportunities across 3 consecutive sessions.
    **Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
    **Intro Date:** August 2026
    **Goal Status:** NEW

13. **Baseline:** During the assessment, Hannah did not engage in any independent functional play and engaged in stereotypic play (dropping, throwing).
    **Goal:** Hannah will engage in adult led functional play for 30 seconds in 50% of opportunities across 3 consecutive sessions.
    **Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
    **Intro Date:** August 2026
    **Goal Status:** NEW

**Social Behavior**

14. **Baseline:** Hannah was observed in making eye contact with the assessor when a reinforcer was present or when spoken to. No skill was observed for responding to greetings.
    **Goal:** Hannah will respond to greetings from others with 2 seconds of eye contact 2 times in 80% of opportunities across 3 consecutive sessions.
    **Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
    **Intro Date:** August 2026
    **Goal Status:** NEW

15. **Baseline:** This skill was not observed during the assessment.
    **Goal:** Hannah will sit next to other children in group activities for 30 seconds 2 times with adult prompting in 80% of opportunities across 3 consecutive sessions.
    **Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
    **Intro Date:** August 2026
    **Goal Status:** NEW

16. **Baseline:** During the assessment, this skill was not observed.
    **Goal:** Hannah will tolerate approaching other children with adult prompting 2 times in 50% of opportunities across 3 consecutive sessions.
    **Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
    **Intro Date:** August 2026
    **Goal Status:** NEW



MetroEHS Pediatric Therapy | 44670 Ann Arbor Road W Suite 130, Plymouth, MI 48170
313-278-4601 313-347-1652 info@metroehs.com www.metroehs.com

Exhibit J15

**Motor Imitation**

17. **Baseline:** No skill was displayed during the assessment.
    **Goal:** Hannah will imitate 2 motor movements when prompted with 'do this' in 50% of opportunities across 3 consecutive sessions.
    **Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
    **Intro Date:** August 2026
    **Goal Status:** NEW

18. **Baseline:** Hannah displayed 0% accuracy when presented with an imitation with objects task.
    **Goal:** Hannah will imitate 2 motor movements with objects when prompted with 'do this' in 50% of opportunities across 3 consecutive sessions.
    **Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
    **Intro Date:** August 2026
    **Goal Status:** NEW

**Behavior Decrease**

19. **Baseline:** During parent interview, Mom informed the assessor that Hannah engages in aggression to others including biting, scratching, and hitting.
    **Goal:** Hannah will show a 25% reduction from baseline in aggression (hitting, biting, scratching) across 10 consecutive sessions.
    **Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
    **Intro Date:** August 2026
    **Goal Status:** NEW

20. **Baseline:** During parent interview Mom informed the assessor that Hannah engages in mouthing various items. During direct observation, mouthing objects was present.
    **Goal:** Hannah will show a 25% reduction from baseline in mouthing across 10 consecutive sessions.
    **Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
    **Intro Date:** August 2026
    **Goal Status:** NEW

21. **Baseline:** During parent interview, Mom informed the assessor that Hannah engages in self-injurious behaviors including head hitting and self-biting.
    **Goal:** Hannah will show a 25% reduction from baseline in SIB (hitting head, self biting) across 10 consecutive sessions.
    **Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
    **Intro Date:** August 2026
    **Goal Status:** NEW

22. **Baseline:** During direct observation, Hannah immediately transitioned back to stereotypic behavior (dropping and throwing items) after adult prompting to complete a task.

Exhibit 16

**Goal:** Hannah will tolerate adult prompting to complete a task or activity in 50% of opportunities across 3 consecutive sessions.
**Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
**Intro Date:** August 2026
**Goal Status:** NEW

**Behavior Increase**

23. **Baseline:** During direct observation, Hannah needed full physical prompting to transition between items and frequently walked away from assessor during transitions.
**Goal:** Hannah will transition between preferred activities when prompted by an adult prompting with the absence of maladaptive behaviors in 50% of opportunities across 3 consecutive sessions.
**Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
**Intro Date:** August 2026
**Goal Status:** NEW

24. **Baseline:** During parent interview, Mom reported that Hannah engaged in maladaptive behaviors when denied access to preferred items.
**Goal:** Hannah will tolerate relinquishing a neutral item to an adult in 50% of opportunities across 3 consecutive sessions.
**Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
**Intro Date:** August 2026
**Goal Status:** NEW

25. **Baseline:** During parent interview, Mom reported she has safety concerns regarding Hannah's balance during transitioning.
**Goal:** Hannah will tolerate holding an adult's hand during transitions between locations in the clinic in 50% of opportunities across 3 consecutive sessions.
**Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
**Intro Date:** August 2026
**Goal Status:** NEW

26. **Baseline:** Mom reported during parent interview that Hannah engages in maladaptive behaviors (kicking and elopement) when getting her diaper changed.
**Goal:** Hannah will tolerate getting her diaper changed by an adult with the absence of maladaptive behaviors (kicking, elopement) in 50% of opportunities across 3 consecutive sessions.
**Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
**Intro Date:** August 2026
**Goal Status:** NEW

**Daily Living Skills**

METROEHS PEDIATRIC THERAPY
PEDIATRIC THERAPY THAT REVEALS THE SUPER IN EVERY CHILD!

Exhibit J17

27. **Baseline:** During parent interview, Mom reported that Hannah has started to sit on the toilet, however, she remains wearing diapers.
**Goal:** Hannah will complete a toileting routine (e.g., pulling down pants, sitting on toilet, pulling up pants, flushing toilet) with no more than a gesture prompt in 50% of opportunities across 3 consecutive sessions.
**Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
**Intro Date:** August 2026
**Goal Status:** NEW

28. **Baseline:** During parent interview, Mom reported that Hannah can wash her hands with adult prompt.
**Goal:** Hannah will complete a hand washing routine (e.g., turn one water, wet hands, get soap, scrub, etc.) with no more than a gesture prompt in 50% of opportunities across 3 consecutive sessions.
**Strategy for generalization:** Hannah will learn to generalize this skill via multiple exemplars, multiple instructors [including the parents] and/or multiple settings.
**Intro Date:** August 2026
**Goal Status:** NEW

**Goal Summary**
**Total Goals:** 28

**Parent Coaching Goals:**

1. **Baseline:** There is no baseline due to this being parents first experience in ABA therapy.
**Goal:** Hannah's mother will learn and state the 4 functions of behavior and will provide one example of each during parent training sessions in 4 out of 4 opportunities.
**Intro Date:** August 2026
**Goal Status:** NEW

2. **Baseline:** Hannah's parents reported limited functional communication in the home setting.
**Goal:** Hannah's mom will contrive at least 10 opportunities per day for Hannah to use alternative communication (eye contact or gestures) to access desired items in the home for 3 consecutive weeks.
**Intro Date:** August 2026
**Goal Status:** NEW

3. **Baseline:** Hannah's mom reported mouthing and self-injury in the home setting multiple times per day.
**Goal:** Hannah's mother will take frequency data on Hannah's mouthing and self-injury behaviors in the home for 3 days/week on a data collection sheet provided by the BCBA and report on data collected in parent training sessions.
**Intro Date:** August 2026
**Goal Status:** NEW

4. **Baseline:** Hannah's mom reported mouthing and self-injury in the home setting multiple times per day.


MetroEHS Pediatric Therapy | 44670 Ann Arbor Road W Suite 130, Plymouth, MI 48170
313-278-4601 313-347-1652 info@metroehs.com www.metroehs.com

Exhibit 518

**Goal:** Hannah's mother will take ABC data on previously identified maladaptive behaviors in the home (e.g., mouthing and self-injury) at least 3 times per week on an ABC data collection sheet provided by the BCBA and will report on data collected in parent training sessions.
**Intro Date:** August 2026
**Goal Status:** NEW

5. **Baseline:** There is no baseline due to this being parents first experience in ABA therapy.
   **Goal:** Hannah's mom will attend at least 75% of scheduled parent training sessions across the next 6 months.
   **Intro Date:** August 2026
   **Goal Status:** NEW

**Individualized Treatment Plan and Updates:**

Based on the above assessment, the beneficiary is able to actively participate in ABA Therapy.
This Applied Behavior Analysis (ABA) treatment plan, created by Metropolitan Speech, Sensory and ABA Centers, will focus on the below skills mastered at 80% or higher accuracy across 3 consecutive observations (unless otherwise noted), maintained across 4-week generalization checks.

*While this treatment plan will be updated **every six months**,* the goals listed below may or may not be met within that six-month period, as these are long-term goals. These goals will be broken down into smaller objectives and will be targeted until the long-term goal is met. Ongoing assessment of progress within these goals will take place and adjustments will be made as necessary. New goals will be added as needed.

**Program Development**

Individual programs should be created and provided for each of the goals outlined above. Each program should include relevant information about the following:

a) The targeted skill response/behavior
b) The necessary materials needed to run the program
c) A detailed description of how to deliver the instruction (provide the discriminative stimulus, the expected response, the delivery of a consequence and necessary prompts)
d) Description of strategies used to promote generalization
e) Mastery criteria for meeting program/skill requirements
f) Methods of data collection methods
g) Necessary program details (i.e., chaining or shaping procedures)
h) Breakdown of component skills that are to be addressed and acquired in a sequential order to meet the program goal
i) Program prerequisites (if applicable).

**Coordination with Other Clinicians/Providers**

The BCBA will facilitate the development of an integrated home/center-based program by coordinating treatment goals with Hannah's other service providers and educators. Treatment coordination may include record/treatment plan reviews, discussions regarding treatment interventions and effectiveness, and, attending Hannah's school for observation or meetings when she begins school, in order to effectively transfer other specialists' goals across home, school and community environments.

Exhibit 9

When Hannah begins receiving speech, OT, and PT from Metro EHS, the BCBA and behavior technicians will meet and shadow with clinicians regularly to foster an environment of collaboration amongst all disciplines. Progress, goals, and interventions will be shared to increase Hannah's skills across all disciplines.

## Risk Factors

**Self-Injury (Level 3 Risk):** Per caregiver report, Hannah engages in self-injury behaviors including self-biting and hand-mouthing that, per parent report, has caused injury in the past. Self-biting is defined as any instance in which Hannah opens and closes her teeth onto her own skin with enough force to leave a mark, cause redness, or break the skin. Hand-mouthing is defined as any instance in which Hannah places part of her hand, including fingers, thumbs, palms, or knuckles, past the plane of the lips and rubs her hand against her lips or teeth. Caregivers reported that the primary function of self-injury is tangible, escape, and automatic. Self-injury behaviors occur approximately 7-10 times per day within the home environment.

- **Plan:** Functional communication training will be used to shape appropriate requesting to gain access to preferred items or activities, or to terminate aversive events or activities as an alternative to self-injury. Frequency of self-injury behaviors along with ABC data will be recorded for 3 consecutive sessions to determine baseline level before implementing intervention procedures. If behaviors are not observed to decrease within the first 60-90 days, an FBA will be conducted to accurately identify the function(s) of the target behavior and determine the best intervention strategies. An individualized BIP will be developed and implemented to address the behavior.

**Mouthing (Level 4 Risk):** Per caregiver report and direct observation, Hannah engages in mouthing items. Mouthing is defined as any instance in which Hannah places a non-edible object in her mouth without the intent to consume it. The hypothesized function from the assessment observation is automatic/sensory. Mouthing is displayed in many occurrences throughout the day.

- Frequency and ABC data will be taken on mouthing of inedible objects to understand the function and occurrence of the behavior. Staff will ensure Hannah's safety by redirecting mouthing by presenting a functional alternative (DRA) and by monitoring closely when Hannah is engaging with items that contain multiple pieces. Baseline frequency and ABC data will be collected for the first 10 sessions. The BCBA will also work with OT to develop sensory routines to address oral seeking. If the behavior is not observed to decrease within the first 60-90 days, an FBA will be conducted to accurately identify the function(s) of the target behavior and determine the best intervention strategies. An individualized BIP will be developed and implemented to address the behavior.

## Medical Necessity/Benefit of ABA Therapy:

Based on the assessment results, Hannah earned a 10.5 out of 170 on the VB-MAPP, placing her within the level 1 (0-18) milestone range. Hannah demonstrates significant deficits in expressive and receptive communication, social interaction, listener responding, and functional language skills. She currently communicates primarily by pulling on an adult and whining. In addition, Hannah frequently engages in repetitive mouthing of toys and objects and self-injury, which may interfere with her learning opportunities and participation in instruction. ABA therapy is necessary to increase Hannah's functional communication, reduce behaviors that interfere with learning, and develop age-appropriate social and adaptive skills across home, clinic, and community settings.

Exibit J20

Hannah also presents significant barriers that impact her ability to benefit from everyday learning opportunities. During the assessment, she required frequent prompting to participate in activities or to follow simple instructions. Hannah demonstrated multiple instances of mouthing with toys and repeatedly placed her first 3 fingers in her mouth.. Parent reports also identified biting, hitting, scratching, and mouthing as primary maladaptive behaviors. These behaviors, along with limited communication skills, may occur in response to demands or difficulty expressing her wants and needs. ABA therapy will focus on teaching functional communication, increasing tolerance for instruction, improving social engagement, and reducing challenging behaviors through evidence-based interventions. It is medically necessary for Hannah to attend ABA therapy to allow the BCBA to monitor, analyze and determine the best teaching strategies and behavior interventions to best support Hannah's growth and continued development. Parent training provided by the BCBA will ensure generalization of teaching strategies, prompting and behavior interventions, so that parents and caregivers feel comfortable and are able to effectively carry out teaching strategies and interventions outside of the clinic setting.

**Clinical Recommendation**

It is recommended by the BCBA that Hannah receives 35 hours of 1:1 applied behavior analysis treatment per week with 7 hours (20%) supervision. Hannah's parents were informed of this recommendation and are able to commit to the recommended schedule at this time. Hannah is being evaluated for OT, PT, and speech therapy through MetroEHS and following those evaluations, a discussion will occur with the family regarding the recommended frequency and a decrease addendum will be submitted to account for the addition of outpatient services.

**Transition Criteria:**

Hanah qualifies for transition criteria when she meets the following:

- Communication: Requesting/manding, labeling/tacting, intraverbals, listener responding
- Stereotypy that is incompatible with instruction: reduction of stereotypical behaviors that hinder their ability to follow instruction or complete daily tasks.
- Adaptive living skills: Client will be toilet trained within the clinical setting.
- Social skills: Reciprocal conversation, group/classroom skills, turn taking games, social emotional learning.
- Problem behavior: Problematic behaviors have reduced across settings and do not pose risk or harm to themselves or those around them.
- Plan to fade treatment: ABA hours will reduce by .5 to 1 in duration per mastery of the above transition goals. A reduction of hours will be indicated during reauthorization.
- **Hannah will reduce ABA hours from 35 hours to 30 hours per week when she meets the following goals:**
    - Hannah will point to a preferred item as a mand with no more than a model prompt in 50% of opportunities across two consecutive weeks.
    - Hannah will show a 25% reduction in self-injury for two consecutive weeks.
    - Hannah will attend to peers with no more than a gesture prompt from an adult in 80% of opportunities across two consecutive weeks.
    - Hannah will transition from non-preferred to preferred activities with no more than a verbal prompt in 80% of opportunities across two consecutive weeks.
- **Hannah will reduce ABA hours from 30 hours to 25 hours per week when she meets the following goals:**

Exhibit S21

- Hannah will independently point to a preferred item as a mand for 5 different items in 50% of opportunities across two consecutive weeks.
- Hannah will show a 25% reduction in mouthing for two consecutive weeks.
- Hannah will initiate physical interactions with peers with no more than a gestural prompt in 80% of opportunities across two consecutive weeks.
- Hannah will transition from preferred to preferred activities with no more than a verbal prompt in 80% of opportunities across two consecutive weeks.

- **Hannah will reduce ABA hours from 25 hours to 20 hours per week when she meets the following goals:**
  - Hannah will mand for 10 different desired items or activities using vocal language and/or an alternative communication method with no more than 1 adult prompt for two consecutive weeks.
  - Hannah will show a 50% reduction in self-injury across two consecutive weeks.
  - Hannah will complete a hand washing routine with no more than a model prompt in 80% of opportunities across two consecutive weeks.
  - Hannah will engage in social play with peers for 5 minutes without adult prompts for two consecutive weeks.
  - Hannah will transition from preferred to non-preferred activities in the absence of maladaptive behaviors in 50% of opportunities across two consecutive weeks.
- **Hannah will reduce ABA hours from 20 hours to 15 hours per week when she meets the following goals:**
  - Hannah will independently mand for 10 different desired items or activities using vocal language and/or an alternative communication method for two consecutive weeks.
  - Hannah will show a 50% reduction in self-injury.
  - Hannah will engage in social group with peers for 10 minutes with no more than 1 adult prompt across two consecutive weeks.
- **Hannah will reduce ABA hours from 15 hours to 10 hours per week when she meets the following goals:**
  - Hannah will spontaneously mand for 5 different items in 80% of opportunities across two consecutive weeks.
  - Hannah will show a 75% reduction in self-injury and mouthing behaviors across two consecutive weeks.
  - Hannah will transition from preferred to non-preferred activities in the absence of maladaptive behaviors in 80% of opportunities across two consecutive weeks.
  - Hannah will engage in turn taking with peers for 5 turns with no more than a verbal prompt in 80% of opportunities across two consecutive weeks.
- **Hannah will reduce ABA hours from 10 hours to 5 hours per week when she meets the following goals:**
  - Hannah will spontaneously mand on average 10 times per session across two consecutive months.
  - Hannah will engage in 0 instances of self-injury across two consecutive months.
  - Hannah will independently complete a hand washing routine in 80% of opportunities across two consecutive months.

Exhibit 52

- Hannah will complete 80% of transitions in the home and clinic setting in the absence of maladaptive behaviors for two consecutive months.
- Hannah will engage in cooperative play with peers for up to 5 minutes without prompts for two consecutive months.

**Discharge Criteria:**

The beneficiary has met discharge criteria when the BCBA has determined one or more of the following:

- The beneficiary has met ABA Treatment Plan goals within her developmental level with 80% accuracy across 3 consecutive sessions and generalized across at least 2 different settings and is no longer is in need of ABA services.
- The beneficiary has made no measurable progress (50% accuracy or less) toward meeting goals identified on the ABA Treatment Plan after at least two successive six-month progress review periods and repeated modifications to the Treatment Plan.
- ABA Treatment Plan gains are not generalizable or durable over time and do not transfer to the larger community setting (to include school) after at least two successive six-month progress review periods and repeated modifications to the Treatment Plan.
- The beneficiary can no longer participate in ABA (due to medical problems, family problems or other factors that prohibit participation).
- The eligible member has reached the defining age limit as specified for At-Risk for ASD eligibility, which is up to 3 years of age, or for Diagnosed with ASD eligibility, which is under 21 years of age.
- Services are no longer medically necessary, as evidenced by the use of valid evaluation tools administered by a qualified licensed practitioner.
- The beneficiary goals are home and community based at this time rather than requiring DTT sessions in a clinical setting to manage behaviors.

  **Plan:** BCBA would continue parent training on a weekly basis, for up to an hour, to manage any behaviors that occur in the community or in the home setting. If beneficiaries and BCBA believe that Hannah would benefit from home-based or community-based services rather than clinic based, BCBA will provide the family with recommendations to other ABA centers who can better assist the family.

  **Goals to be met to determine discharge:**

  - Hannah will display 0 maladaptive behaviors across environments for two consecutive months.
  - Hannah will independently communicate her wants and needs to at least 5 different adults across environments using vocal verbal communication across two consecutive months.
  - Hannah will independently initiate and engage in cooperative play with peers for 15 minutes for two consecutive months.
  - Hannah will independently complete 3 different adaptive living skills (e.g., getting dresses, washing hands, brushing teeth, etc.) in absence of prompting or maladaptive behaviors across at least 2 settings.

**Estimated ABA Therapy Schedule:**

**Monday:** 1.0 Sessions, 1.0 Therapists for a total of 7.00 hours Behavior Technician: Kara Verbeke, RBT
**Tuesday:** 1.0 Sessions, 1.0 Therapists for a total of 7.00 hours Behavior Technician: Grant Johnson, BT
**Wednesday:** 1.0 Sessions, 1.0 Therapists for a total of 7.00 hours Behavior Technician: Kara Verbeke, RBT
**Thursday:** 1.0 Sessions, 1.0 Therapists for a total of 7.00 hours Behavior Technician: Grant Johnson, BT
**Friday:** 1.0 Sessions, 1.0 Therapists for a total of 7.00 hours Behavior Technician: Kara Verbeke, RBT

Exibit 523

## AGENCY

**Number of Requested Hours per WEEK:**
**Number of hours per WEEK of Line Therapy (97153):** 35 hours a week to provide direct one-on-one ABA Therapy.
**Number of hours per WEEK of BCBA/Supervision: (97155):** 7 hours per week to supervise Behavior Technicians during ABA therapy sessions.

- Supervision sessions will be scheduled 2 times per week for 3.5 hours in duration

**Number of hours per WEEK for Parent Training [without beneficiary present] (97156):** 1 hour per week.

**Number of Requested Units per WEEK:**
**Number of units per WEEK of Line Therapy (97153):** 140 units per week to provide direct one-on-one ABA Therapy.
**Number of units per WEEK of BCBA/Supervision: (97155):** 28 units per week to supervise Behavior Technicians during ABA therapy sessions.
**Number of units per WEEK for Parent Training [without beneficiary present] (97156):** 4 units per week.

**Number of Requested Units per AUTHORIZATION:**
**Number of UNITS per Authorization Period for Line Therapy (97153):** 3,640 units per authorization of direct one on one ABA therapy.
**Number of UNITS per Authorization Period for BCBA/Supervision (97155)**: 728 units per authorization of supervision
**Number of UNITS per Authorization Period for Parent Training (97156):** 104 units for parent training per authorization period.

**Number of Requested Units for Assessment per AUTHORIZATION:**
**Reassessment (97151 PR):** 12 units every 6 months.

**Parent Resources**

- Autism Alliance of Michigan (AAOM) -- https://autismallianceofmichigan.org/
- Evidence-Based Practices – National Professional Development Center on ASD (NPDC) and Association for Science in Autism Treatment (ASAT)
- Special Education Resources for Families – Michigan Alliance for Families (MAF) https://www.michiganallianceforfamilies.org/
- Respite care may also be provided to the family

**Duration of ABA Therapy:**
Based on the beneficiary's progress as outlined in this Treatment Plan, the projected duration of ABA Therapy necessary for the beneficiary to meet Discharge Criteria is through adulthood or as long as medically necessary. For

Exibit J24

ABA therapy to decrease in hours, the beneficiary needs to demonstrate at least 75% of age-appropriate skills in the natural environment.

**Total time spent on assessment and plan development:** 8 hours

*Respectfully submitted,*

Madison Lee

Madison Lee, MS, LLP, BCBA, LBA

Date

Parent Signature

Date

**References**

Cooper, J. O., Heron, T. E., & Heward, W. L. (2019). Applied Behavior Analysis (3rd Edition). Hoboken, NJ: Pearson Education.

Sundberg, M.L. (2008) VB-MAPP Verbal Behavior Milestones Assessment and Placement Program: A Language and Social Skills Assessment Program for Children with Autism or Other Developmental Disabilities. Guide, AVB Press.

Please direct any questions or concerns to **Madison Lee, 313-278-4061 ext.118, and mlee@metroehs.com**

MCCRORY CENTER
Psychological Services

Exhibit 25

## CONFIDENTIAL PSYCHOLOGICAL EVALUATION REPORT

| | |
|---|---|
| **Consumer's Name** | Hannah Robinson |
| **Date of Birth** | 07/09/2023 |
| **Age** | 2 years and 9 months |
| **Case Number** | 01621818 |
| **Date** | 04/14/2026 |
| **Time** | 2:30pm - 4:30pm |
| **Examiner** | Raven Beasley, MA, MLP |
| **Informant** | Troi Graham (mother) |
| **Location** | 7800 West Outer Dr. Ste LL30 Detroit, MI 48235 |

**PROCEDURES:**
[x] Record review
[x] Clinical interview with parent(s)
[x] Developmental Assessment of Young Children - Second Edition
[x] The Bayley Scales of Infant and Toddler Development –Fourth Edition
[x] Autism Diagnostic Observation Schedule 2nd (ADOS-2)
[x] Developmental Disability Global Assessment Scale (DD-GAS)

**Reason for Referral:**
Hannah is a 2-year-9-month-old female who was referred to the McCrory Center (SCA) for a psychological diagnostic evaluation to determine if the consumer has autism spectrum disorder (ASD) after a preliminary screening was conducted through the Detroit Wayne Integrated Health Network (DWIHN) that identified risk. Troi Graham, who identified as Hannah's biological parent, served as the informant and provided verbal and written consent to proceed with the evaluation. The overall reason for seeking the evaluation was due to Hannah's developmental challenges, signs, and symptoms that became noticeable at the age of 1 year old. Noted concerns are that Hannah recently started walking, is diagnosed with developmental delay, nonverbal, peers out of her eyes, doesn't engage with other children, and still eats baby food.

**BACKGROUND INFORMATION**

MCCRORY CENTER
Psychological Services

Exhibit 326

**Medical History:**
Hannah's primary care provider is Dr. Meagan Kalowski, who is affiliated with the University of Michigan clinic located in Ann Arbor, MI. It was reported that her last primary care provider clinic visit was April 2026. Troi Graham reported expressing concerns to her primary care provider. Hannah has no known allergies to foods or medications. However, she does have an allergy to latex. Hannah is currently taking prescription medications including seizure medication. Hannah is not currently up to date on scheduled recommended immunizations as she has an immunization waiver. Hannah's sleeping and eating habits were described as poor.

Hannah's vision and hearing screening results are abnormal. Hannah's lead results range was considered unknown. Hannah has a history of hospitalizations including, April 2026 for Epilepsy. Troi Graham reported no history of Hannah experiencing any surgeries. Hannah's medical conditions were reported as seizures or convulsions, asthma or bronchitis, speech or language delays. Hannah has not previously undergone an autism evaluation in the past. Hannah is not currently receiving therapeutic treatment for the behavioral symptoms. Troi Graham did not report any additional medical history at the time of the evaluation.

**Family History:**
Hannah primarily resides in Dearborn, MI, with her mother and one sibling living in the same household. The predominant language spoken in the home is English. Troi Graham reported the family's medical conditions, indicating a history of ADD/ADHD. Troi Graham did not report any additional family history at the time of the evaluation.

**Developmental History:**
Hannah was born prematurely at 30 weeks gestation via vaginal delivery and weighed 4 lbs and 16 ounces. Troi Graham indicated known post-delivery complications as Hannah was admitted to the NICU for a couple weeks. Troi Graham indicated that prenatal vitamins were taken while pregnant. It was also indicated that there was no history of substance use during any trimester of pregnancy.

Troi Graham was asked to provide information on Hannah's progress in achieving developmental milestones. Hannah's developmental milestone history is reported as follows:

- A response to a social smile - delayed
- Pointed to objects, things, or people - delayed
- said first words other than mama/dada - delayed
- used phrase speech - delayed
- walked independently - mastered at 2 years old
- used a spoon or fork to feed self - delayed
- expressed interest in other children - delayed
- toilet trained - yet to learn

MCCRORY CENTER
Psychological Services

Exhibit 27

Hannah has a poor vocabulary for their age. Hannah has no history of regression with respect to motor, language, or social skills. It is reported that Hannah has no words in her vocabulary.

**Educational History:**
Troi Graham indicated that Hannah is currently enrolled in an educational program. Hannah receives Early On services once a week in a day care setting.

**Behavior and Social History:**
Hannah's interests, strengths, and hobbies include food and being held. Troi Graham indicated that the behaviors of concern are outside their family's cultural norms. Since the onset, the behavioral symptoms have worsened.

Troi Graham was asked to report about the following behaviors and Hannah's specific responses. Hannah is described as having sensitivities or sensory-seeking behaviors related to different sounds in the environment. She has known sensitivities or sensory-seeking behaviors related to different textures or touches. Hannah has known sensitivities or sensory-seeking behavior related to lights as she follows lights and stare into lights. She has known difficulties with emotional reactions as it was reported. According to Troi Graham, transitions are difficult for Hannah.

Hannah reportedly avoids making eye contact with others. It was also reported that she does not understand social cues. Hannah engages in repetitive behaviors, including tapping. She has known fixations on certain activities, including a specific toy. Hannah is not known to engage in any ritualistic or patterns of behavior. Hannah has not demonstrated a consistent ability to recall and perform previously learned tasks.

**Risk Assessment:**
Troi Graham responded to the following questions regarding potentially harmful behaviors the client may engage in. Troi Graham reported that Hannah has a history of eating or digesting non-edible items. She has a history of self-harming behaviors, including biting her hand, banging her head, and throwing herself on the floor. Hannah has no known history of elopement behaviors. She has a history of physical aggression towards others, including kicking, biting, and scratching. Hannah sometimes responds to her name being called. It was reported that Hannah has not experienced any recent significant stressors. She has not experienced any known or suspected trauma.

**ASSESSMENT RESULTS**

---

**Behavior Observations:**
Hannah presented as a 2 year old toddler girl. She was accompanied to the appointment by her mother Troi Graham. Her appearance was neat, clean, and appropriate for the context of testing. There were no issues transitioning into the assessment room. Hannah did not use any words throughout the assessment. Her vocalizations never appeared to be directed towards the examiner or her mother. There was an odd cry with few other vocalizations. She did not echo

MCCRORY CENTER
Psychological Services

Exhibit 28

others or use stereotyped speech as her language is too limited to judge. Hannah did not maintain appropriate eye contact throughout the assessment as it was inconsistent. She presented with a full affect. Her overall mood was euthymic and pleasant. She did not engage in any self injurious behaviors. There was some hyperactivity throughout the assessment. Hannah did not display any aggressive or anxious behaviors throughout the assessment. Further behavioral observations are noted in the *Assessment of Autism Symptoms* section.

**Cognitive Development:**

The *Developmental Assessment of Young Children Second Edition (DAYC-2)* is an individually administered, norm-referenced measure of early childhood development for children from birth through age 5 years 11 months. The DAYC-2 measures five domains: Cognitive, Communication, Social-Emotional, Physical Development, and Adaptive Behavior. The purposes of the assessment are to identify children who may be experiencing developmental delays in any of the five domains, to monitor children's progress in early childhood programs, and for research. It is administered by a clinician or a team through observation, interview of caregivers, and/or direct assessment. Examiners may administer all domains to derive the General Developmental Index (GDI) or only those pertaining to an area(s) of concern. Domain and subdomain results are described as quotients (M=100, SD=15), age equivalents, or percentiles.

Hannah's results are as follows:

| Domain/*Subdomain* | Standard Score | Percentile | Descriptor |
|---|---|---|---|
| Cognitive | 52 | 0.1 | Very Poor |
| Communication | 52 | 0.1 | Very Poor |
| *Receptive Language* | 50 | <0.1 | Very Poor |
| *Expressive Language* | 55 | 0.1 | Very Poor |

The Cognitive Domain measures conceptual skills: memory, purposive planning, decision-making, and discrimination. Specifically, Hannah's scores fell in the Below Average range (SS=52, P=0.1). Hannah follows the path of fast moving objects and explores objects in a variety of ways. Hannah will not pull a cloth from her face and cannot find an object that is partially hidden.

The Communication Domain measures skills related to sharing ideas, information, and feelings with others, both verbally and nonverbally. It comprises Receptive Language and Expressive Language. Specifically, Hannah scored in the Very Poor range in Receptive Language (SS=50, P=<0.1) and the Very Poor range for Expressive Language (SS=55, P=0.1). Overall, in the Communication Domain Hannah scored in the Very Poor range (SS=52, P=0.1). Hannah will turn and produces three or more single vowel sounds. Hannah does not move her body to music and does not laugh out loud.

MCCRORY CENTER
Psychological Services

Exhibit 529

**Adaptive Functioning:**
The *Bayley Scales of Infant and Toddler Development –Fourth Edition* (Bayley-4; Bayley & Aylward, 2019) is an individually-administered, norm-referenced instrument that can be used to identify developmental delays, monitor progress, and teach parents about children's development. The test is designed to be used with children ages 16 days to 42 months. It consists of five scales: Cognitive (visual preference, attention, memory, sensorimotor, exploration and manipulation, concept formation), Language (receptive and expressive), Social-Emotional, Adaptive, and Motor (fine and gross).

Hannah's results are as follows:

**Standard Score Summary**

| Scale Score | Sum of scaled scores | Standard score | Percentile rank | 90% Confidence Interval | Descriptive classification |
|---|---|---|---|---|---|
| **Social-Emotional** | | | | | |
| Social-Emotional (SOEM) | 1 | 55 | 0.1 | 47-63 | Extremely low |
| **Adaptive Behavior** | | | | | |
| Communication (COM) | 2 | 45 | <0.1 | 41-49 | Extremely low |
| Daily Living Skills (DLS) | 1 | 55 | 0.1 | 49-61 | Extremely low |
| Socialization (SOC) | 2 | 45 | <0.1 | 40-50 | Extremely low |
| Adaptive Behavior (ADBE) | 5 | 40 | <0.1 | 37-43 | Extremely low |

*Social-Emotional Scale (SOEM)*
The Social-Emotional Scale measures development in infants and young children by identifying social-emotional milestones that are typically achieved by certain ages. Social-Emotional (SE) Social-Emotional items assess your child's social interactions; how well she communicates emotions; and how your child responds to sounds, touch, and other things in the environment.

*Adaptive Behavior Scale (ADBE)*
The Adaptive Behavior Scale asks caregivers to assess their child's ability to adapt to various demands of normal daily living and become more independent. Receptive (REC) Receptive items assess how well your child processes information in social interactions, understands words, and listens to a story. Expressive (EXP) Expressive items assess your child's vocabulary development. Personal (PER) Personal items assess what your child does to take care of herself in activities, such as dressing, eating, toileting, and washing. Interpersonal Relationships (IPR) Interpersonal Relationships items assess how your child responds and relates to people (e.g., caregiver-child interactions, interest in other children, friendships). Play and Leisure (PLA) Play and Leisure items assess how your child plays and has fun, such as playing simple games with you, playing with peers, and eventually taking turns.

MCCRORY CENTER
Psychological Services

Exhibit J30

## SCORE SUMMARY PROFILE

Subtest/Subdomain Score Profile




Standard Score Profile




### Assessment of Autism Spectrum Disorder Symptoms:

The *Autism Diagnostic Observation Schedule (ADOS-2)* is a semi-structured, standardized assessment instrument that includes a number of play-based activities designed to obtain information in the areas of communication, reciprocal social interactions, and restricted and repetitive behaviors associated with a diagnosis of ASD.

| | |
|---|---|
| ADOS-2 | Module: 1A |
| Social Affect | 16 |
| Restricted and Repetitive Behaviors (RRB) | 6 |
| Total SA + RRB | 22 |
| Classification | Autism |

MCCRORY CENTER
Psychological Services

Exhibit 30

Based on Hannah's presentation during the ADOS-2, Module 1A, Hannah does meet the criteria for an Autism Spectrum Disorder diagnosis.

*With respect to language and communication*, Hannah did not use any words throughout the assessment. Her vocalizations never appeared to be directed towards the examiner or her mother. There was an odd cry with few other vocalizations. She did not echo others or use stereotyped speech as her language is too limited to judge. She did not point as described. Spontaneous gestures were limited throughout the assessment.

*With respect to reciprocal social interaction*, Hannah did not maintain appropriate eye contact throughout the assessment as it was inconsistent. There was a delayed smile in response to the second smile of the examiner. Hannah showed little expressed pleasure during interactions with the examiner but showed pleasure in her own actions. When her name was called, Hannah looked towards the examiner the third time she was called. Hannah requested with inconsistent eye gazes. She did not give or show items to others. Hannah followed the examiner's gaze towards the toy dog. There were no social overtures of any kind. Hannah showed relatively little concern as to whether the examiner or her mother was paying attention to her throughout the assessment. There were minimal responses to the examiner's attempts to engage with Hannah except during the snack activity. Overall, Hannah showed minimal regard for the examiner.

*With respect to stereotyped behaviors and restricted interests*, Hannah peered out the side of her eye, ground her teeth, mouthed items, frequently tapped items, spun in circles, and fixated on the toy dog's tail. She did not engage in any self injurious behaviors. There was some hyperactivity throughout the assessment. Hannah did not display any aggressive or anxious behaviors throughout the assessment.

**Global Assessment of Functioning:**
The *Developmental Disabilities- Children's Global Assessment Scale (DD-CGAS)* is a measure for assessing the severity of symptoms and behaviors in children who are identified as having a developmental disability. Upon completing the measure, the child is given a single score between 1 and 100, based on a clinician's assessment of a range of aspects related to a child's psychological and social functioning. The score will put them in one of ten categories that range from 'extremely impaired' (1-10) to 'doing very well' (91-100). Functioning in four domains is considered: Self-care, Communication, Social Behavior, and School/Academic.

Hannah's DD-CGAS score is currently **33:** Hannah displays severe impairment in functioning in some domains. Rudimentary instrumental (not social) communication skills. Repetitive behaviors that interfere with adaptive functioning. Marked social withdrawal in most situations. Adaptive behavior significantly impaired. Significant environmental accommodations are needed in some domains. Very immature adaptive and self-care skills in at least two domains.

**Limitations of Testing:**
While psychological testing can answer many questions, it does have limitations. These include:

MCCRORY CENTER
Psychological Services

Exhibit 31

- Testing results are based on a person's performance at that moment in time. It generally does not speak to future abilities.
- We are dependent on the history you give us.
- Assessment tools are not perfect. Each tool we use has its own strengths and weaknesses. We choose tools based on what we think will best answer your referral question.
- For children under two years of age and for those who may have limited English, the ADI-R and ADOS utilized during evaluations as a result of the limited amount of other psychological tools available, therefore, results are to be interpreted with caution and annual testing is highly recommended.
- It is important to remember that when a clinician uses the term "rule out" in their report, this does not mean that the diagnosis is definitively excluded. It simply means that the clinician has considered it and determined that it is not the most likely diagnosis at this point in time. This can be useful for future clinicians who may be taking over the care of the patient, this ensures that the diagnostic process is thorough and accurate to answer the referral question. Additionally, it allows for the possibility of considering alternative diagnoses in the future if necessary.

## CONCLUSIONS

---

**Clinical Summary:**
Hannah is a 2-year-9-month-old female who was referred to the McCrory Center (SCA) for a psychological diagnostic evaluation to determine if the consumer has autism spectrum disorder (ASD) after a preliminary screening was conducted through the Detroit Wayne Integrated Health Network (DWIHN) that identified risk. Troi Graham, who identified as Hannah's biological parent, served as the informant and provided verbal and written consent to proceed with the evaluation. The overall reason for seeking the evaluation was due to Hannah's developmental challenges, signs, and symptoms that became noticeable at the age of 1 year old. Noted concerns are that Hannah recently started walking, is diagnosed with developmental delay, nonverbal, peers out of her eyes, doesn't engage with other children, and still eats baby food.

Cognitively, Hannah has scored in the Very Poor range of cognitive development compared to other children her age. This means she is not on target with peers her age when it comes to developing conceptual skills including memory, purposeful positive planning, decision-making, and discrimination. Hannah scored in the Very Poor range in her language skills. Hannah likely does not have a wide variety of word knowledge and general information and may have difficulty forming verbal concepts and reasoning compared to her peers.

Adaptively, based on the ratings from Hannah's mother, she scored in the Extremely Low range in the Communication domain. This means she likely struggles to express herself and communicate with others. She also may struggle with taking in information, learning to read, and learning to write. Additionally, Hannah's daily living skills are in the Extremely Low range compared to peers her age. This suggests that she is unable to complete everyday tasks of living

MCCRORY CENTER
Psychological Services

Exhibit 32

that are appropriate for her age. When it comes to socialization, Hannah's skills are considered to be in the Extremely Low range for her age suggesting she adequately engages with others, has interpersonal relationships, and properly utilizes coping skills in social situations compared to her peers.

Based on the results from the record review, clinical interview, the ADOS-2, and other psychological measures and as outlined above, Hannah's presentation reflects the DSM-5 TR criteria for the diagnosis of Autism Spectrum Disorder with Language Impairment.

**Diagnostic Summary:**

| **DSM-5 TR Diagnosis:** | **ICD-10 Code** |
|---|---|
| Autism Spectrum Disorder<br>· *Social Communication Domain – Level 3*<br>· *Restricted and Repetitive Behaviors Domain – Level 3*<br>· *With Language Impairment* | F84.0 |

*BHT Medical Necessity Criteria:*

| **A.** Qualitative Impairment in social interaction, as manifested by: | |
|---|---|
| **Presence (yes or no)** | **Area of Concern:** |
| Yes | Social-emotional reciprocity, ranging, for example, from abnormal social approach and failure of normal back-and-forth conversation; to reduced sharing of interests, emotions, or affect; to failure to initiate or respond to social interactions. |
| Yes | Nonverbal communicative behaviors used for social interaction, ranging, for example, from poorly integrated verbal and nonverbal communication; to abnormalities in eye contact and body language or deficits in understanding and use of gestures; to a total lack of facial expressions and nonverbal communication. |
| Yes | Developing, maintaining, and understanding relationships, ranging, for example, from difficulties adjusting behavior to suit various social contexts; to difficulties in sharing imaginative play or in making friends; to absence of interest in peers. |

| **B.** Restricted, repetitive, and stereotyped patterns of behavior, interests, and activities, as manifested by: | |
|---|---|
| **Presence (yes or no)** | **Area of Concern:** |

MCCRORY CENTER
Psychological Services

Exhibit 33

| | |
|---|---|
| Yes | Stereotyped or repetitive motor movements, use of objects, or speech (e.g., simple motor stereotypies, lining up toys or flipping objects, echolalia, idiosyncratic phrases) |
| Yes | Insistence on sameness, inflexible adherence to routines, or ritualized patterns of verbal or nonverbal behavior (e.g., extreme distress at small changes, difficulties with transitions, rigid thinking patterns, greeting rituals, need to take same route or eat same food every day) |
| Yes | Highly restricted, fixated interests that are abnormal in intensity or focus (e.g., strong attachment to or preoccupation with unusual objects, excessively circumscribed or perseverative interest). |
| Yes | Hyper- or hypo-activity to sensory input or unusual interests in sensory aspects of the environment (e.g., apparent indifference to pain/temperature, adverse response to specific sounds or textures, excessive smelling or touching of objects, visual fascination with lights or movement). |

**Clinical and Medical Recommendations:**

1. Hannah should continue seeking medical advice and receiving ongoing monitoring from her primary care provider.

2. Hannah and her family are recommended to receive Support Coordination. A Support Coordinator can assess needs and connect families with resources in their community to help them meet their goals. They can also provide ongoing support and monitoring to make sure that the services are being provided. Hannah's family can follow up with the DWIHN at 313-344-9099 to determine the assigned Support Coordinator at Easterseals MORC.

3. Hannah would benefit from receiving comprehensive Applied Behavioral Analysis (ABA), therapy specifically for communication, adaptive and social skills acquisition. The therapy program should be designed to specifically address his deficits. Applied Behavior Analysis (ABA) is a type of therapy that focuses on improving specific behaviors, such as social skills, communication, reading, and academics as well as adaptive learning skills.

4. Hannah is recommended to obtain a Speech Language Pathology evaluation for treatment toward language development. Speech therapy is the assessment and treatment of communication problems and speech disorders. It is performed by speech-language pathologists (SLPs), who are often referred to as speech therapists. Speech therapy techniques are used to improve communication. These include articulation therapy, language intervention activities, and others depending on the type of speech or language disorder.

5. Hannah is recommended to obtain an Occupational Therapy (OT) evaluation for the

MCCRORY CENTER
Psychological Services

Exhibit 53

treatment of motor ability. A variety of OT approaches have been reported to be effective in producing gains in helping individuals with ASD to self-regulate their emotions as well as tolerate social interactions. Occupational therapy can help to improve a child's motor, cognitive, sensory processing, communication, and play skills.

6. It is recommended Hannah's family seek consultation with a physical therapist to address her walking patterns and improve her coordination. Pediatric physical therapy assists in the early detection of health problems and uses a variety of modalities to provide physical therapy for disorders in the pediatric population. These therapists are specialized in the diagnosis, treatment, and management of infants, children, and adolescents with a variety of congenital, developmental, neuromuscular, skeletal, or acquired disorders/diseases. Treatments focus mainly on improving gross and fine motor skills, balance and coordination, strength and endurance as well as cognitive and sensory processing/integration.

**Additional Recommendations for the Family:**
The Autism Alliance of Michigan offers an array of support services to children and families of children with autism. You should consider contacting the organization for additional support services at https://autismallianceofmichigan.org; 877. 463.AAOM.

Preliminary evaluation results and recommendations were discussed with her mother on 04/14/2026. An expanded feedback session is scheduled for a later date to go over the results and recommendations in more detail. Any questions regarding this consultation should be directed to the undersigned.

**Examiner(s) Signature and credentials:**

Raven Beasley
MA, MLP

Name: Raven Beasley, MA, MLP    Date: 04/19/2026

**Supervisors Signature and credentials:**

Ph.D.
Darryl Warner PhD, LP
Licensed Psychologist

Date reviewed 04/22/2026

Name: Hannah M Robinson | Legal Name: Hannah M Robinson | DOB: 7/9/2023 | MRN: 102319015 | PCP: Benjamin Maddock, MD

Exibit J34

# Telephone Encounter (Hannah)

Signed Apr 22, 2026

Telephone Encounter by Mallory Lejman, CGC at 4/22/2026 10:27 AM

I contacted Hannah's mother to discuss Hannah's genetic test results. Whole genome sequencing was performed through GeneDx Laboratories and revealed a pathogenic variant in one copy of Hannah's *WDR45* gene. **This is consistent with a genetic diagnosis of WDR45-related disorder.**

We reviewed that variants in this gene are associated with a spectrum of genetic conditions collectively known as WDR45-related disorder. On the milder end of the spectrum, individuals experience isolated mild cognitive impairment or developmental delays and epilepsy. The more severe end of the spectrum includes conditions such as beta-propeller protein-associated neurodegeneration (BPAN). **Hannah's results are felt to explain her developmental delays and seizures.** We discussed that at this time, it is unclear what symptoms Hannah may experience in the future, but that we will continue to research Hannah's variant and discuss this more at her appointment to review these results.

This variant is inherited in an X-linked pattern. Due to this, females typically have fewer symptoms than males. Based on the testing of both of Hannah's mother, GeneDx Laboratories has determined that this variant is not maternally inherited. Therefore it is either de novo in Hannah,meaning it occurred for the first time in her, or (less likely) paternally inherited.

As part of Hannah's whole genome sequencing, she also had his mitochondrial genome analyzed. The mitochondria are organelles within the cell that carry their own DNA. Hannah was not found to carry a mitochondrial variant.

Hannah's family also opted to receive secondary findings. Secondary findings are a set of genes recommended for analysis by the American

College of Medical Genetics and Genomics (ACMG) due to the management recommendations that can be put in place if one of the associated conditions is diagnosed. Hannah was not found to carry a pathogenic variant in any of these genes. This negative result does not necessarily indicate that Hannah's mother also doesn't carry a variant; her testing is performed in a different manner than Hannah's.

Hannah's mother's immediate questions were answered. We discussed that we would like to see the family on 5/11 at 10am for a follow up appointment to review these results in detail. The family agreed with this plan. Information to sign up for the Patient Portal was provided.

Of note, Hannah was also confirmed to have a pathogenic variant in the *HBB* gene consistent with her known hemoglobin C trait. This was maternally inherited.

Sincerely,

Mallory Lejman
Pediatric Genetic Counselor

MyChart® licensed from Epic Systems Corporation© 1999 - 2026

Exhibit 135

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

**UNITED STATES OF AMERICA v. TROI GRAHAM (5)**
CASE NO. 1:25-CR-00038-MAC-ZJH | HON. MARCIA A. CRONE

# EXHIBIT K

## MICHIGAN VOCATIONAL REHABILITATION RECORDS

Official records from the State of Michigan Department of Labor & Economic Opportunity (LEO) / Michigan Rehabilitation Services (MRS).

**Summary for the Court:** Establishes active enrollment in state vocational rehabilitation programs and localized medical care within Wayne County, Michigan.

Exibit K1

STATE OF MICHIGAN

GRETCHEN WHITMER
GOVERNOR

DEPARTMENT OF LABOR AND ECONOMIC OPPORTUNITY
MICHIGAN REHABILITATION SERVICES

SUSAN CORBIN
DIRECTOR

The patient was last seen by me on 3/26/2026

District Office

**ATTN: Dr. Rubina Tahir, D.C.** May 27, 2026

**Client Name: Graham, Troi** **Social Security # XXX-XX-1352 D.O.B. 6/26/93**

The above-named client has shown interest in applying to our Agency for vocational services and has indicated that you provide medical treatment and care. Please complete this and the attached form(s) and include any *additional* documentation that may be of assistance. A response within two weeks would be greatly appreciated.

on 3/26/26:

To assess his/her eligibility for services, it is necessary for us to have written documentation of the:

**Diagnosis:** m99.15, m99.13, m99.12, m99.11

N/A **Medication:** (1)____ (2)____ (3)____ (4)____ (5)____ (6)____ (7)____

**Functional/ Emotional Limitations:** ____

**Prognosis for employment:** ____ **Can the client work:** part-time?____ full time?____
If so, how many hours?____ **Recommendations for vocational training and/or employment:** ____

**Accommodations Needed:** ____

____ Again, please include any additional treatment documentation that may be of assistance. Your cooperation is appreciated.

If you have any questions regarding this request, please contact: Kimberly Moore, Rehabilitation Counselor at (734) 666-8451.

**PHYSICIAN/THERAPIST SIGNATURE** R.Tah **Date:**

The patient needs to present to the clinic for updated evaluation and treatment plan.

Thank You,

Kimberly C. Moore

Kimberly Moore MS

FedEx

TO REUSE: Mark through all previous shipping labels and barcodes.

ORIGIN ID:DETA (517) 375-4444
TROI GRAHAM

20049 EVERGREEN MEADOWS RD

SOUTHFIELD, MI 48076
UNITED STATES US

SHIP DATE: 29OCT26
ACTWGT: 1.35 LB
CAD: 6575280/ROSA2710

BILL THIRD PARTY

TO JACK BROOKS FEDERAL BUILDING
UNITED STATES COURTHOUSE
300 WILLOW STREET
SUITE 104
BEAUMONT TX 77701

(999) 999-9999 REF:
INV:
PO: DEPT:

FedEx Express

E

REL# 3785346

FRI - 30 OCT 5:00P
STANDARD OVERNIGHT

TRK# 0201 8793 9096 5791

XA BMNTG

BPTA 77701
TX-US IAH

CLERK, U.S. DISTRICT COURT
RECEIVED
OCT 30 2026
EASTERN DISTRICT OF TEXAS
BEAUMONT, TEXAS

Reusable Enve

Recycle me.

1521

Align bottom of peel-and-stick airbill or pouch here.